**STATE of Maine**

v.

**Clifton E. UPTON.**

Supreme Judicial Court of Maine,
York.

Aug. 3, 1976.

Peter J. Goranites, P. J. Perrino, Jr., Asst. Attys. Gen., Augusta, for plaintiff.

William S. Brodrick, South Berwick, Ronald D. Bourque, Sanford, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

On July 28, 1974, the Kittery Trading Post was the scene of two homicides. The manager of the Trading Post, Wayne Loring, was fatally shot as was one of his employees, Nancy Upton, the wife of the defendant. The defendant was indicted for these homicides and entered pleas of "not guilty" and "not guilty by reason of mental disease or defect" to both charges. In a consolidated trial the jury returned a guilty verdict on the indictment charging the murder of Wayne Loring. On the indictment charging the murder of Nancy Upton, however, the jury returned a verdict of "not guilty by reason of mental disease."

The appellant has appealed from the guilty verdict only, apparently being satisfied that there was no error in the verdict of not guilty by reason of mental disease.

We deny the appeal.

I

■ At trial appellant did not deny committing the acts which caused the two deaths but took the position that under the provisions of 15 M.R.S.A. § 102 he was not "criminally responsible" for either because each admittedly unlawful killing "was the product of mental disease or mental defect."

The jury having rejected his contention with reference to the first homicide and having adopted it with reference to the second, the appellant now urges that the guilty verdict was logically inconsistent with the other verdict and, therefore, cannot stand either on the facts or as a matter of law. We disagree.

Whether verdicts returned by the same jury which are *admittedly* inconsistent with each other are reversible as a matter of law, we need not decide in this case. *See Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *United States v. Maybury,* 274 F.2d 899 (2d Cir. 1960); *Commonwealth v. Scott,* 245 N.E. 2d 415 (Mass. 1969). Although the record before us is extensive and involves more than four hundred pages of testimony dealing with the appellant's mental condition, our review thereof satisfies us that on the facts the jury verdicts were not necessarily inconsistent.

In *State v. Durgin,* 311 A.2d 266, 268 (Me. 1973), we analyzed carefully the relative functions of the psychiatric expert and the jury, holding that it was the province of the jury to

"resolve the question of fact whether or not the accused has established by a fair preponderance of the evidence that he was suffering from a mental disease or mental defect which substantially im-

paired his mental or emotional processes so that the conduct complained of was the product of such mental disease or defect," [1]

and we likewise limited the scope of expert testimony to describing

"the mental and emotional condition of the accused at the time the conduct complained of was committed, except that the expert *should not give his opinion as to* the cause of the conduct." (Emphasis supplied.)

Being thus admonished by the teaching of *Durgin,* we must look to the facts to determine if there was competent evidence which would justify the jury's conclusion that appellant was not suffering from either a mental disease or defect when he fatally shot Wayne Loring.

If the jury had accepted the testimony of a psychiatric witness offered by the State, it would have been justified in concluding that the appellant, although having a personality disorder, did not suffer from any neurosis. Other witnesses for the State admitted the possibility that at some undefined point during the dual killings the defendant's mental condition might have become questionable.

The two experts who testified for the defense were in general agreement that the defendant suffered from "hysterical neurosis, dissociative type." In the opinion of these experts, under acute distress this condition could develop into psychotic proportions and, given impetus, could "catapult" the defendant into a condition where he would have no conscious awareness of what he was doing or any control over his actions. However, there was no general agreement as to *precisely when* this condition would develop. [2] The jury conceivably

---

1. *See State v. Buzynski,* 330 A.2d 422 (Me. 1974); *see also Buzynski v. Oliver,* 538 F.2d 6 (1st Cir. 1976).

2. Shortly before the two homicides the appellant had entered the Kittery Trading Post

and had engaged in some type of argument with his wife who was waiting on customers. He left the building but returned shortly and the argument resumed, the parties leaving the customer area and entering a storeroom. Wayne Loring attempted to intercede and,

could have determined that the killing of Wayne Loring triggered the reaction described by the defense psychiatrist so that, even though only seconds elapsed between the two killings, the defendant would have no conscious awareness of his actions when he shot his wife. In short, although a minimal time period was involved, the time was sufficient to activate his latent psychosis.

Were we to consider adopting a rule reversing verdicts in criminal trials which were necessarily inconsistent, we would have to recognize such verdicts as logically impossible. However, such a holding is unnecessary if it can be determined that allegedly inconsistent verdicts in fact present no inconsistency and are capable of logical reconciliation. *Commonwealth v. White,* 296 N.E.2d 822 (Mass. 1973). *State v. Coleman,* 46 N.J. 16, 214 A.2d 393 (1965), presented a factual situation nearly identical to that in the instant case. In *Coleman* there were dual killings within moments of each other, and verdicts of guilty and not guilty by reason of insanity were returned. The New Jersey Court determined that the jury was at liberty to accept or reject expert psychiatric testimony in light of their human experience, noting that psychiatrists "do not have all the answers." In *Coleman,* as in the case before us, it was held that

> "the jury's diverse treatment of the two killings does not offend common sense nor result in any unfairness or injustice
> . . .."

214 A.2d at 407.

In summary, we conclude that the guilty verdict was not necessarily inconsistent with the jury's other response of not guilty by reason of mental disease.

## II

Appellant has argued that the doctrine of collateral estoppel would compel a reversal and a mandated entry of "not guilty by reason of mental disease" as to the death of Wayne Loring. However, this argument is premised on a reversal of the conviction because of inconsistency between the two verdicts. Since we have rejected this argument, we need give no further consideration to this point on appeal.

## III

The presiding Justice denied a motion for mistrial, and the final point to be considered on this appeal is whether this ruling constituted reversible error.

During the cross-examination of the defendant's brother and one of the defense psychiatrists, the prosecutor asked certain questions which suggested several acts of past wrong doing by the appellant. At the time the questions were asked no objection was made and thus we must determine whether the refusal to grant a mistrial constituted manifest error. Rule 52(b), M.R.Crim.P.

When the Justice below was instructing the jury he used these cautionary words:

> "An attempt was made to determine through him [appellant's brother] the state of mind of Clifton Upton. And the questions were not, themselves, evidence."

■ It can no longer be open to doubt in Maine that the granting of a mistrial lies within the discretionary powers of a presiding Justice and, absent a clear abuse of that discretion, the Law Court has no right to substitute its judgment for that of

---

upon doing so, he was shot. Witnesses then said that a very short period of time elapsed when more shots were heard, after which the appellant left the store with a revolver in his hand. The body of Nancy Upton was found some distance from that of Wayne Loring and evidenced three bullet wounds. Witnesses who described the shooting were un-

able to definitively estimate actual time between the shots. However, the weapon was a revolver and it required cocking between firings so it is clear that there was some elapsed time between shots. However, it would be fair to say that it is more probable that seconds were involved rather than minutes.

a presiding Justice who had the advantage of seeing the witnesses and hearing their testimony. *State v. Gaddis,* 322 A.2d 96 (Me. 1974); *State v. Dyer,* 289 A.2d 693 (Me. 1972). As this case is postured, we are not faced with the problem presented by *State v. Tibbetts,* 299 A.2d 883 (Me. 1973), where a prosecutor used a *constitutionally* impermissible comment in arguing to the jury. The cross-examination here complained of did not infringe on any constitutional rights of the defendant.

■ We must assume that the Justice below satisfied himself that the questions complained of were non-prejudicial because he denied the motion for a mistrial. After a careful review of the record,[3] we are unable to detect any abuse of discretion in his decision.

The entry is:

Appeal denied.

All Justices concurring.

3. Although the form of the questions varied somewhat, in essence there were fewer than ten questions asked of which complaint is made. Including colloquy with the Court and the witness, only eight pages of the transcript reflect these questions. Juxtaposed against these are approximately four hundred pages of testimony devoted exclusively to psychiatric testimony coming from witnesses both for the State and the defense. Additionally, the purpose of the questioning was to explore the expert's knowledge of appellant's past life, since it was agreed that psychiatric experts do give serious consideration to a patient's past conduct in making a diagnosis.