**STATE of Maine**

v.

**Lawrence C. DiPIETRO.**

Supreme Judicial Court of Maine.

Argued Sept. 11, 1980.

Decided Oct. 15, 1980.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty. (orally), Neale Duffett, Bar Candidate, Portland, for plaintiff.

Pickering & Becker, P.A., Peter J. Becker (orally), Bridgton, for defendant.

Before McKUSICK, C. J., GODFREY, NICHOLS and ROBERTS, JJ., and DUFRESNE, A. R. J.

McKUSICK, Chief Justice.

Defendant Lawrence C. DiPietro was tried before a Superior Court Jury in Cumberland County on a three–count indictment, two charging tampering with a witness, 17–A M.R.S.A. § 454(1)(B)(1) (Supp. 1980), and the third charging terrorizing, *id.* § 210. The jury returned guilty verdicts on the two witness–tampering counts, but the presiding justice ordered acquittal on the terrorizing count. We deny defendant's appeal from his two convictions for witness–tampering.

In June, 1977, Joseph Francoeur, now the complaining witness in this criminal proceeding and a former employee of defendant DiPietro, sued DiPietro in the District Court seeking money damages on an account or alternatively under an oral contract of employment. On two subsequent occasions, once in January and a second time in March, 1978, defendant DiPietro confronted Francoeur at a Portland restaurant. Those two incidents gave rise to the present criminal charges against DiPietro.

The first encounter took place on January 26, 1978. Francoeur and several companions were in Danny's Restaurant in Portland. According to Francoeur's testimony at trial, as he was leaving the restaurant defendant DiPietro got up from a bar stool, partially blocking Francoeur's passage, and

said to him in a voice so low that it could not be overheard, "You better get off my back and have your attorney get off my back if you know what's good for you and your attorney and your family." The first count charging witness–tampering under section 454 of the Criminal Code was based on that January incident.

The second encounter occurred on March 21, 1978, again at Danny's Restaurant. While Francoeur was sitting in a booth talking with one Leo Murphy, defendant DiPietro approached. According to Francoeur, defendant "advised" him not to appear at the hearing in the pending civil litigation between them, repeating his threat of January. Francoeur testified that defendant, standing in close proximity to him and with fists doubled up, then said in a very loud voice that the only thing that was keeping him from putting Francoeur's head through the wall was the presence of Murphy. That March 21 incident gave rise both to Count II of the indictment charging witness–tampering and to Count III charging terrorizing under section 210 of the Criminal Code.

After submission of the case to the jury and after some two hours of jury deliberation, the presiding justice, with the agreement of counsel, asked the jury if it had reached a verdict on any of the counts. The foreman responded that the jury had reached a verdict on two of the three counts but was still discussing the third. The presiding justice then brought the jury back, took its verdict of guilty on the two counts of witness–tampering, and, on defendant's motion, ordered an acquittal on the count of terrorizing.

■ On his appeal from the two convictions for witness–tampering, defendant asserts that four errors were made in the trial court. Only the first of his assertions of error, namely, that involving the exclusion of cross–examination attempted by his counsel at trial, was preserved for normal appellate review. The other alleged errors, being "unsaved," can be grounds for reversal only if they are obvious errors affecting defendant's substantial rights. *See* M.R. Crim.P. 52(b); *State v. Estes*, Me., 418 A.2d

1108, 1115 (1980). In any event, we do not find any error, obvious or otherwise, in the trial that resulted in defendant's convictions.

I.

Defendant first argues that the presiding justice improperly restricted his trial counsel's cross–examination of the chief prosecution witness, Francoeur. On that cross–examination, defense counsel sought to bring out that at one time Francoeur had been arrested in the midwest for illegally drawing funds on a trucking contract and that he had blamed his enmeshment in the criminal processes upon defendant. By counsel's theory, Francoeur had acquired from that experience a strong bias against defendant. This proffered evidence directly attacked Francoeur's credibility; but the presiding justice excluded it, even though it was relevant, on the ground stated in M.R. Evid. 403, namely, that "its probative value [was] substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

■ Reviewing the trial justice's ruling for abuse of discretion, *see State v. Clough*, Me., 391 A.2d 361, 362 (1978), we can find no error. The fact that witness Francoeur had earlier brought a civil suit against defendant DiPietro was already known to the jury. The court justifiedly cut off testimony about the antagonisms between the State's leading witness and defendant DiPietro at that point. Understandably the justice could have feared that the focus of the case might in the jurors' minds shift from the issues of fact relating to the January and March encounters between Francoeur and DiPietro, to the issues of right and wrong in their other stormy dealings. In any event, the attempted cross–examination was cumulative of ample evidence otherwise proving the hostility that existed between the two men. Even though the jurors' verdict finally depended almost exclusively on which of the two antagonists they believed, the presiding justice acted well within the permissible range of his discretion in refusing to permit a digression into collateral matters.

## II.

Defendant's appellate counsel contends that the prosecutor improperly attacked defendant's credibility by asking a question for which the prosecutor had no foundation. This alleged error at trial was never called to the presiding justice's attention. In any event, we find that no error occurred.

Appellate counsel's argument is based upon a single, isolated question. On cross-examination of defendant DiPietro, the prosecutor asked whether defendant had told Detective Conley of the Portland police department two days after the March 21 encounter that he had not been at Danny's at all on that afternoon. Defendant answered: "I do not recall that statement." Subsequently, Detective Conley testified for the State that defendant DiPietro had told him he was at Danny's Restaurant only between two and three o'clock on March 21 and that he had not seen or talked with Francoeur that day. That story, told to Conley only two days after the critical incident, was later abandoned by the defendant himself, who in his direct testimony acknowledged he was at Danny's at about 4:00 p. m. and had had an altercation with Francoeur.

 A careful reading of the whole record convinces us that the prosecutor in his closing argument did nothing more than legitimately attack defendant's credibility by contrasting his original denial to Detective Conley of having been at Danny's after 3:00 p. m. on March 21 and his contradictory testimony at trial. It is true that one isolated question turned out to be without foundation. Nothing suggests, however, that the prosecutor did not at the time he asked the question believe in good faith that it would get an affirmative answer or

that other evidence was available to prove the fact implied by the question. *Cf. People v. Perez*, 58 Cal.2d 229, 240, 23 Cal.Rptr. 569, 574–75, 373 P.2d 617, 622–23 (1962) (prosecutor's knowledge of lack of foundation for question asked on cross–examination of a defense witness may be ground for reversal). This court will not at all condone a prosecutor's conscious use of a foundationless question for the purpose of illegitimately suggesting nonexistent facts to the jury. There is, however, nothing whatever in this record to show that any such abuse occurred in the trial that resulted in this defendant's conviction.

## III.

Defendant's appellate counsel next argues that the three subparagraphs of 17–A M.R.S.A. § 454(1)(b)[1] describe three mutually exclusive types of witness–tampering, that the State's evidence showed defendant DiPietro was trying to induce Francoeur to absent himself from the civil proceeding pending between them, and that subparagraph (3)–if otherwise available–and not subparagraph (1) controls. Since Francoeur had not been summoned in the civil action, the State could not have proved that necessary element of the type (3) witness–tampering offense; and therefore, defendant's present counsel belatedly argues on appeal, defendant's convictions must be reversed.

 Counsel's compartmentalized reading of the subparagraphs of section 454(1)(B) is entirely unpersuasive. Subparagraph (1) broadly relates to inducing the withholding of evidence, while subparagraph (3) is specifically directed to inducing noncompliance with a witness subpoena in a civil case. DiPietro's conduct as pleaded and proved under Counts I and II falls

---

1. *17–A M.R.S.A. § 454 (Supp.1980) provides in pertinent part:*

 1. *A person is guilty of tampering with a witness . . . if, believing that an official proceeding, as defined in section 451, subsection 5, paragraph A, . . . is pending or will be instituted:*

 . . . . .

 B. He uses force, violence or intimidation . . . with the intent to induce a witness . . .:

 (1) To withhold any testimony, information or evidence;

 (2) To absent himself from any criminal proceeding or criminal investigation; or

 (3) To absent himself from any other proceeding or investigation to which he has been summoned by legal process . . . .

precisely within the conduct described in subparagraph (1). Even if on a particular set of facts a defendant could alternatively be indicted either for intimidating a potential witness to induce him to withhold testimony or for intimidating him to induce him not to comply with a civil subpoena, the prosecution and the grand jury would be free to choose which brand of witness–tampering it would charge. *See* 17–A M.R.S.A. § 13 (Supp.1980). In section 454(1)(B) there appears no plain legislative intent to the contrary. *See State v. Anderson*, Me., 409 A.2d 1290, 1305 (1979).

The Superior Court committed no error in trying and convicting DiPietro for the subparagraph (1) type of witness–tampering.

### IV.

Defendant's final argument, again asserted for the first time on appeal, is that since the presiding justice found the evidence of the March 21 encounter insufficient for the jury to convict DiPietro of terrorizing on Count III of the indictment, the evidence must necessarily have also been insufficient for DiPietro's conviction for witness–tampering on Count II arising out of the same incident.

■ Simple comparison of the terrorizing statute (17–A M.R.S.A. § 210 [2]) with the witness–tampering statute [*id*, § 454(1)(B) [3]] immediately refutes defendant's contention. To obtain a conviction under section 210, the prosecution plainly must prove a threat by the accused of a more violent and immediate nature than the "intimidation" that is adequate as an element in a section 454(1)(B) offense. For DiPietro to have been convicted for section 210 terrorizing, the State would have had to establish beyond a reasonable doubt that defendant communicated to Francoeur a threat to

commit a crime of violence dangerous to human life and that the natural and probable consequence of that threat was to place Francoeur in reasonable fear that such a crime would be committed. By contrast, for a section 454 conviction for witness–tampering, the State needed to show only that defendant used intimidation with the intent to induce Francoeur to withhold testimony in the civil action pending between them. The jury acted reasonably in finding that defendant's statement that he would put Francoeur's head through the wall if Murphy were not present, taken with defendant's threatening demeanor, constituted intimidation with the intent to induce Francoeur to withhold his testimony. On the other hand, the conditional nature of defendant's threat critically detracted from its having the natural and probable consequence of placing Francoeur in reasonable fear that a crime of violence dangerous to human life would in fact be committed.

■ Furthermore, even if the jury's verdict on Count II were essentially inconsistent with the trial justice's direction of acquittal on Count III, we would reach no different determination. Mere inconsistency between guilty and not guilty verdicts on separate counts of a single indictment will not render the guilty verdict erroneous. *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932) (Holmes, J.); *Commonwealth v. Scott*, 355 Mass. 471, 475, 245 N.E.2d 415, 418 (1969).

On this record the jury was well justified in finding beyond a reasonable doubt that defendant DiPietro committed the offense alleged in Count II. The jury could have found from the evidence before it that defendant in the March encounter with Francoeur practiced essentially the same intimidation as that of January 26 for which he

---

**2.** 17–A M.R.S.A. § 210 (Supp.1980) provides in pertinent part:

 1. A person is guilty of terrorizing if he communicates to any person a threat to commit or to cause to be committed a crime of violence dangerous to human life, against the person to whom the communication is made or another, and the natural and probable con-

sequence of such a threat, whether or not such consequence in fact occurs, is:

 A. To place the person to whom the threat is communicated or the person threatened in reasonable fear that the crime will be committed . . . .

**3.** The relevant portion of 17–A M.R.S.A. § 454(1)(B) is set out in note 1 above.

**1238**

was convicted on Count I. Even if defendant's present claim had been raised below, the presiding justice would have committed no error in refusing to take Count II away from the jury.

The entry must be:

Appeal denied.

Judgments of conviction affirmed.

All concurring.