STATE of Maine

v.

Stanley ENGSTROM.

Supreme Judicial Court of Maine.

Argued Nov. 16, 1982.

Decided Dec. 28, 1982.

David M. Cox, Dist. Atty., R. Christopher Almy, Gary F. Thorne (orally), Asst. Dist. Attys., Bangor, for plaintiff.

Conte, Growe, Lunn & McCue, Carl D. McCue (orally), Bangor, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

WATHEN, Justice.

The defendant, Stanley Engstrom, was convicted of criminal threatening with a firearm, Class C, 17–A M.R.S.A. § 209 (Pamph.1982),[1] following a jury trial in Superior Court, Penobscot County. He seeks reversal of his conviction on the following grounds: (1) discovery violations by the State, (2) error in admitting an opinion expressed by a lay witness, (3) error in requiring the jury to continue deliberating and in causing testimony to be read to the jury, (4) inconsistency of verdict, (5) cumulative error resulting in the denial of a fair trial, and (6) insufficiency of the evidence to support a conviction. We deny the appeal.

The defendant was indicted and tried for two counts of criminal threatening with a firearm. The two counts contain identical allegations with the exception of the identity of the person placed in fear of imminent bodily injury. Count I refers to Randall Scripture while Count II refers to Raymond Toothaker.

The testimony at trial reflects that the defendant arrived at Mr. Scripture's home at 10:30 p.m. on August 21, 1981, after a long day of heavy drinking. A party was under way and among the guests were the defendant's wife and children. Shortly after arriving the defendant displayed a pistol which he was carrying on his person. The incident with Mr. Scripture resulted from the defendant's asking to see his wife. Mr. Scripture stated that she was not there and the defendant pushed the pistol in Mr. Scripture's abdomen and called him a liar. Mr. Scripture turned his back and stated that he did not care if the defendant shot. Within minutes after this incident, Raymond Toothaker, a guest at the party, was stopped by the defendant at gun point

while Mr. Toothaker was trying to get into his car to leave the party. He was held at gun point by the defendant for 15 to 20 minutes, during part of which time he was on his knees. The defendant told Mr. Toothaker that he was going to "blow his brains out."

Defense counsel sought to defend on the basis that defendant's intoxication created a reasonable doubt as to the existence of the required culpable state of mind. The defense presented Dr. Kamm, a psychiatrist involved in the treatment of alcoholics, who testified extensively on alcoholic blackouts and the effect of intoxication on awareness. It was his opinion that the defendant was suffering from a blackout on the evening in question. The jury ultimately returned a verdict of not guilty on Count I, and a verdict of guilty on the Count II indictment involving Mr. Toothaker. From this latter verdict the subject appeal is taken.

■ The alleged violation of the discovery rules arose at that point in the trial at which the State called the victim, Mr. Toothaker, as a witness. Defense counsel moved for a mistrial or dismissal on the grounds that the State failed to provide him with a written summary of the witness' statement. Defense counsel received automatic discovery and discovery upon request pursuant to M.R.Crim.P. 16(a) and (b). He did not request any written or recorded statements of witnesses or summaries of such statements. At no time did he file a motion pursuant to M.R.Crim.P. 16(c) seeking a court-ordered disclosure of such statements. No violation is demonstrated upon this record. Access to written statements of witnesses may be obtained by motion and order of court. One who does not avail himself of that procedure cannot complain. In this case the presiding justice found that the witness had been absent from the State and had never given a statement. Nevertheless the justice recessed to provide defense counsel an opportunity to confer with

---

1. 17–A M.R.S.A. § 209 provides:

   § 209  *Criminal Threatening*

   1. A person is guilty of criminal threatening if he intentionally or knowingly places

another person in fear of imminent bodily injury.

the witness prior to the point at which the witness took the stand. No error was committed in the denial of defendant's motion for mistrial or dismissal.

■ The defendant contends that the court erred in permitting Mr. Scripture to express an opinion. On re-direct examination by the State the following exchange took place:

PROSECUTOR: When he was expressing sorrow, what was he expressing sorrow about:

THE WITNESS: That he'd done something that was—

DEFENSE COUNSEL: I still object, Your Honor, speculative.

THE COURT: I'll permit the answer, go ahead.

PROSECUTOR: I didn't hear the answer.

THE COURT: What was he expressing sorrow for, sir?

THE WITNESS: He'd done something that he was sorry for.

The defendant now argues on appeal that since the witness is not a medical expert, he should not have been permitted to state his opinion as to the cause of the defendant's sorrow. It is possible that the witness was merely paraphrasing a statement of the defendant, but even if we assume that he was rendering his conclusion as to the etiology of defendant's sorrow it does not rise to the level of obvious error affecting substantial rights. The issue pressed by counsel was not preserved by stating the specific ground of objection at trial. M.R.Evid. 103(a)(1). If the court admitted the statement as opinion testimony by a lay witness pursuant to M.R.Evid. 701, such a shorthand rendering of the facts is unassailable when judged on the basis of obvious error.

The defendant has several objections to the conduct of the jury deliberations and to the reading of a portion of the trial testimony to the jury. The deliberations of the jury began at 12:15 p.m. At approximately 3:00 p.m., the jury made inquiry by note and requested: (1) clarification of the definition of intoxication, (2) the allegations of the indictment, and (3) instructions as to

"how much weight do jurors put on intoxication." The presiding justice responded appropriately. At 5:15 p.m. the jury sent a note requesting that a portion of Dr. Kamm's testimony pertaining to his opinion of whether the defendant had experienced a blackout be read. The request was granted without objection. At 6:15 p.m., the presiding justice and counsel agreed on sending a note to the jury inquiring as to the state of their deliberations. The jury's reply stated: "We are deadlocked. We are hung up on the blackout versus awareness of the defendant." The presiding justice, without objection, then sent a note asking if the jury would like that portion of Dr. Kamm's testimony read in which he defined blackout. The jury responded affirmatively and counsel and the court first listened to the testimony in its entirety while in chambers. The court then selected a short definitional section of the testimony and in the presence of the jury the following took place:

THE COURT: The Court Reporter has located the portion of the transcript where there was actually a definition of blackout. That will be read back to you. There are a number of portions of the doctor's testimony were [sic] he develops and gives examples, that is not going to be read back to you unless you specifically request it. What she will be reading is his definition of blackout.

Thereupon the Court Reporter read the following:

DEFENSE COUNSEL: If one is in this stage [blackout], how does it affect his consciousness and his appreciation of how he's affecting others?

DR. KAMM: I think as I already testified, if a person is intoxicated and then severely intoxicated, the mechanical parts of the brain that have to deal with memory, recall, organization and behavior do not work as well . . . .

THE COURT: That's essentially the definitional portion of the testimony. There is undoubtedly, you recall, a significant part of the testimony which deals with specific examples of behavior that he was using to illustrate various states of intox-

ication. That's very lengthy and if you want it, you can have it but I would just as soon not have it read back without a specific request from you. But, as I say, if you want it, you can have it and let us know.

Defense counsel objected and requested that a greater portion of the testimony be read and requested an opportunity to make an offer of proof. Both the objection and the request were denied and the jury returned its verdict at 8:00 p.m.

Defendant argues that the presiding justice abused her discretion in refusing his request that the court reporter read a greater portion of Dr. Kamm's testimony. The defendant also contends that the presiding justice impermissibly chilled any interest the jury might have had in requesting to hear more of the Doctor's testimony.

■ It is within the trial court's discretion to determine the testimony to be read to the jury in response to inquiry. *E.g., State v. MacDonald,* 382 A.2d 553, 554 (Me. 1978). Although the trial court should not exert pressure on the jury by unduly emphasizing facts that tend to favor one side or the other, there is no abuse of discretion merely because testimony is read back that tends to inculpate the defendant. *State v. Saucier,* 385 A.2d 44, 48 (Me.1978).

In *State v. Vallee,* 137 Me. 311, 315, 19 A.2d 429, 431 (1941), in which the court had refused defendant's request to have cross-examination testimony read, this Court stated that the determinative factor is whether the jury has been sufficiently informed. We went on to state that resolution of the issue is within the discretion of the trial court and does not necessarily hinge on the desire of the jury. *Id.*

■ A review of the transcript in this case reveals no abuse of discretion. The testimony which was selected and read to the jury, fairly and adequately informed the jury on the subject of the inquiry.

While other portions of the witness' testimony may have directly or indirectly borne on the definition, the failure to include them does not demonstrate an abuse of discretion. The presiding justice invited the jury to request further elaboration from the record of the witnesses' testimony, and there is no suggestion that they were inhibited in any way.[2]

■ Next, the defendant argues that the presiding justice erred in initiating an inquiry to the jury as to whether the definition offered by Dr. Kamm would be helpful. Defendant seeks to equate the action of the justice with an expression of opinion upon issues of fact in violation of 14 M.R.S.A. § 1105 (1980) or with an impermissible attempt to influence the jury. Since there was no objection, we deal with this issue upon the basis of obvious error. Although no prior Maine cases have specifically approved a reading of trial testimony initiated by the presiding justice, the cases make clear that so long as the justice maintains a position of neutrality, there is broad discretion in selecting those portions of the record to be read to the jury. *See, e.g., State v. Bachelder,* 403 A.2d 754 (Me.1979); *State v. Hudson,* 325 A.2d 56 (Me.1974); *State v. Jones,* 137 Me. 137, 16 A.2d 103 (1940). In *Commonwealth v. Jones,* 476 Pa. 597, 383 A.2d 523, 524 (1978), the Supreme Court of Pennsylvania held that there was no error in giving the jury additional instructions at 12:25 a.m., even though they had made no request for them and the jury had not indicated it was deadlocked. The justice in this case attempted to assist the jury in its deliberation and in doing so maintained a position of neutrality. Defendant fails in his efforts to demonstrate obvious error affecting substantial rights.

In the matter of jury deliberations, the defendant finally argues that the court violated 14 M.R.S.A. § 1106 (1980) by sending

**2.** Defense counsel also complains, illogically, that the court refused to permit an offer of proof. A review of the record reveals that defense counsel actually sought an opportunity to state for the record those portions which he wished to be read to the jury. In view of the fact that the court had just listened to the court reporter read the testimony, the request was declined.

the jury out for a third time.[3] Section 1106 provides in pertinent part:

> They [the jury] shall not be sent out a 3rd time in consequence of their disagreement unless on account of difficulties not stated when they first came into court.

■ Defendant's position fails to recognize that the jury returned to the courtroom on the first two occasions not as the result of disagreement or expressed inability to reach a verdict, but solely for the purpose of further instruction and for review of testimony. Such occasions for jury return are not within the scope of section 1106.

■ Finally the defendant challenges his conviction on the basis that the verdict resulted from compromise on the part of the jury. It is argued that since the jury returned a verdict of not guilty on the companion charge involving a threat to Randall Scripture, the jury must have determined that the requisite culpable state of mind had not been established at that point in time. From this premise it is argued that since only a short interval of time elapsed between that incident and the incident giving rise to his conviction, the defendant's non-culpable state of mind must have continued to exist. Inconsistent verdicts require reversal only if they are incapable of logical reconciliation. *State v. Upton,* 362 A.2d 738, 740 (Me.1976); accord *State v. DiPietro,* 420 A.2d 1233, 1237 (Me. 1980). The defendant's premise is fallacious in that it disregards the fact that the acquittal could have resulted from the failure in proof that Mr. Scripture was placed in fear of imminent bodily injury. The evidence strongly supports such a conclusion. Since the verdicts in this case may be logically reconciled, defendant takes nothing from this assignment of error.

The remaining issues regarding cumulative error and the sufficiency of the evidence are lacking in merit and require no discussion.

The entry is:

Judgment affirmed.

All concurring.

---

3. The parties have assumed that 14 M.R.S.A. § 1106 is applicable to a criminal trial. For the purposes of the foregoing discussion we indulge in the same assumption without intimating what our opinion might be were the issue squarely before us.