STATE of Maine

v.

Herbert V. KNIGHTS.

Supreme Judicial Court of Maine.

Argued March 16, 1984.

Decided Sept. 5, 1984.

Margaret J. Kravchuk, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Paine, Lynch & Harris, John D. Bunker (orally), Martha J. Harris, Bangor, for defendant.

Before NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

The defendant, Herbert Knights, appeals his convictions after a jury trial in Superior Court, Penobscot County, on three counts of arson, Class A crimes, 17-A M.R.S.A. § 802 (1983 & Supp.1983-1984), contending 1) that the Superior Court erred in finding the defendant competent to stand trial, 2) that the Superior Court erred in denying the defendant's motion to suppress his confessions to all three counts of arson, 3) that the State failed to disprove beyond a reasonable doubt the defendant's defense of duress, and 4) that the State failed to establish the corpus delicti of the first count of arson. Finding no error in the proceedings, we affirm the decision below.

On June 7, 1982, a Penobscot County grand jury returned an indictment charging the defendant with three counts of arson, which allegedly occurred in the Lincoln-Howland area on March 25th, April 3rd, and April 21st of 1982.

## I

The defendant filed a motion for determination of his competency to stand trial and a motion to suppress statements made by him to the police following the April 3rd and April 21st fires. These two motions were heard together in a hearing, at which defendant was present, held December 9, 1982.

### A. *Competency to stand trial*

At that hearing, the defendant called Dr. Bruce Saunders, a psychologist appointed by the court on the defendant's motion to examine and evaluate the defendant. As the result of an intelligence test and clinical interview conducted with the defendant, Dr. Saunders concluded that the defendant was moderately retarded [1] and not oriented to time or place. Dr. Saunders testified that the defendant understood that he was charged with setting a fire and that that act was wrong, but he did not understand the legal consequences of his actions. He

told Dr. Saunders that he set the fires, because he had been threatened with violence if he did not do so. Dr. Saunders stated that the defendant knew who his attorney was and that she was going to help him, but did not understand how he had come to know her. Saunders believed the defendant to be incapable of assisting his attorney, as he was incapable of providing consistent factual accountings of what had occurred or "any specific rationale or reasoning." According to Dr. Saunders, the defendant had scored in the second percentile for individuals of his age on the vocabulary sub-test of the intelligence test and "would not understand half of the vocabulary contained within the sentences of the *Miranda*." Dr. Saunders concluded that defendant could not understand the *Miranda* warnings.

John Stevens of the Fire Marshall's Office also testified. On April 5, 1982, when the defendant was first questioned by Stevens, there had been a total of three fires at two different residences in the Lincoln-Howland area during the previous two weeks. At Stevens' request, Officer Norman Budge of the Lincoln Police Department picked up the defendant on Main Street in Lincoln on April 5th. The defendant agreed to accompany Budge to the police station. At the station, the defendant met Stevens who identified himself and explained to the defendant that he wanted to discuss the three fires. Stevens testified that he then read to the defendant his rights from a *Miranda* waiver form. When asked if he understood his rights, the defendant responded: "yes". Stevens then went through the warnings with the defendant paragraph by paragraph. After reading each paragraph to the defendant, Stevens asked him if he understood, and the defendant responded in the affirmative. Stevens testified that the defendant then signed the *Miranda* waiver form. At the beginning of the interrogation, the defend-

---

**1.** The hearing transcript indicates that Dr. Saunders testified that the defendant had a Full-Scale I.Q. of 69. At trial Saunders testified that the defendant's Full-Scale I.Q. was 59 and that the figure reported in the motion transcript was a typographical error.

ant was quite nervous and claimed that he had no knowledge of the fires. Then Budge, who had known the defendant for approximately ·fifteen years, told the defendant that the officers "just wanted to talk to him about the fires, and ... were just interested in finding out the truth about the fires." Stevens testified that, although no threats or promises were made, the defendant agreed to talk. The defendant admitted to setting the fires. He was able to explain the method by which the fires were set and to provide details consistent with Stevens' investigation. He told Stevens that he had a grudge against the owner of the residences where two of the fires had taken place. Another fire occurred on April 21, 1982. Stevens went to the defendant's residence on the 22nd, and placed the defendant under arrest. Stevens testified that he read to the defendant the *Miranda* warnings again and the defendant agreed to talk. The defendant then confessed to having set all four fires.

Officer Budge also testified; he provided an account of the first interrogation corroborative of Stevens' testimony. At the close of the evidence, the motion justice found that the defendant was competent to stand trial and denied the motion to suppress.

It is well settled that the standard for determining a criminal defendant's competency to stand trial is whether he is

capable of understanding the nature and object of the charges and proceedings against him, of comprehending his own condition in reference thereto, and of conducting in cooperation with his counsel his defense in a rational and reasonable manner.

*Thursby v. State*, 223 A.2d 61, 66 (Me. 1966). *See State v. Ledger*, 444 A.2d 404, 418 (Me.1982); *State v. Furrow*, 424 A.2d 694, 698 (Me.1981). *See also Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). In applying this standard we have recognized that

a defendant may be mentally competent to stand trial although in some other respects his mind is unsound. There are many prisoners who, although competent to stand trial, nevertheless suffer from some level of mental disturbance or defect or require in some respect psychiatric treatment.

*State v. Ledger*, 444 A.2d at 419. Here the motion justice found that although the defendant was in a "stage of mental retardation" he had a sufficient "understanding of the events" so as to be able to assist counsel, and, thus, was competent to stand trial. We must affirm this determination, if the record contains competent evidence supporting the lower court's ruling. *See Id.* at 418.

The record contains ample support for the Superior Court's conclusion. The evidence showed that the defendant knew he had set the fires. Stevens testified that the defendant was able to explain the method by which the fires had been set and that the defendant's explanation was consistent with the findings of the investigation. According to Dr. Saunders, the defendant knew that he had been charged for setting fires and that setting fires was wrong. He had a rationale for his wrong acts—the threat of violence against his person if he did not set the fires.[2] These threats of violence from the defendant's nephew formed the basis of the defense of duress asserted by the defendant at trial. Dr. Saunders also testified that the defendant knew who his attorney was and that she was going to help him. All of this evidence, combined with the motion justice's opportunity to observe the defendant's demeanor in the courtroom during the hearing,[3] provides support for the Superior Court's finding of competence.

---

**2.** Stevens testified that the defendant also stated that he had a grudge against the owner of one of the residences that was burned.

**3.** The defendant did not testify at the hearing. However, he was present in the courtroom. The motion justice could therefore observe his physical appearance and the manner in which he conducted himself under the circumstances.

The defendant urges upon us the evidence in the record that would support a finding that he was incompetent—particularly Dr. Saunders' testimony that the defendant did not understand the legal consequences of his acts and would be unable to assist his attorney. On this issue of competency to stand trial, triable by the single justice as in bench trials, the weight and credibility to be attributed to this testimony are matters within the exclusive province of the factfinder, the motion justice. *See State v. Hassapelis*, 404 A.2d 232, 238 (Me. 1979); *State v. Gove*, 379 A.2d 152, 153 (Me.1977). Although Dr. Saunders testified as an expert psychologist to the effect that the defendant did not understand the legal consequences of his actions and was incapable of assisting his attorney in the preparation and presentation of his defense, and that he could not understand the *Miranda* warnings, the presiding justice was not required to accept the expert's opinion, even though this testimony stood uncontradicted by other expert evidence. *See State v. Boone*, 444 A.2d 438, 444 (Me.1982). The motion justice did not commit error in disbelieving this testimony and in relying, instead, upon the considerable evidence presented by this record supporting a finding that the defendant was competent to stand trial.

### B. *Admissibility of defendant's statements to police*

The defendant next argues that his incriminating statements or confessions were inadmissible in evidence and should have been suppressed, first, because his level of human intelligence precluded a finding by the presiding justice that he knowingly, understandingly and voluntarily waived his *Miranda* rights, and, secondly, because his mental deficiency compelled a finding that the defendant's incriminating statements or confessions were not voluntary. In other words, the defendant in this case raised both issues, a *Miranda* violation based on the lack of understanding of the *Miranda* warnings and at the same time an inherent involuntariness of his incriminating state-

ments or confessions due to the same mental impairment. *See State v. Melvin*, 390 A.2d 1024, 1030 (Me.1978).

Generally speaking, to constitute a valid waiver, a defendant's conduct must amount to an "intentional relinquishment or abandonment of a known right or privilege." *State v. Gordon*, 387 A.2d 611, 612 (Me.1978) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

We recognize that it is the State's burden in any given situation to demonstrate by the federal standard of *proof by a preponderance of evidence* that the preliminary factors of a custodial interrogation are not present to trigger the need for *Miranda* warnings, or, if these preliminary factors do exist, that there was compliance with the *Miranda* requirements and, in relation to any claim of waiver of *Miranda* rights, that the same was made knowingly, understandingly and voluntarily. *See State v. Bleyl*, 435 A.2d 1349, 1357–58 (Me. 1981); *State v. Valentine*, 443 A.2d 573, 577 (Me.1982).

But, before the results of custodial interrogation incriminating a defendant may be admitted in evidence, if it is claimed that the defendant's statements or confessions are involuntary, then that issue of voluntariness must be established by the State under the cogent standard of *proof beyond a reasonable doubt*. *State v. Collins*, 297 A.2d 620, 627 (Me.1972).

In the instant case, the parties do not dispute that the defendant's incriminating statements or confessions were made in the course of a custodial interrogation, nor that the *Miranda* rule was fully observed. In his brief on appeal, the defendant reargues his trial contentions that

[o]n the basis of the record, there is not rational support for a finding beyond a reasonable doubt that the appellant made a knowing and voluntary waiver of his constitutional rights to counsel and against self-incrimination.

The trial justice at the suppression hearing expressly stated that from the totality of the evidence he found

1) beyond a reasonable doubt that any statements that he [the defendant] made were voluntary, and

2) that in all other respects, his constitutional rights were not violated.

Assuming from the court's stated finding that the trial justice charged the State with the same burden of *proof beyond a reasonable doubt* respecting compliance with *Miranda* requirements that he obviously was imposing in regards to the voluntariness of the defendant's incriminating statements or confessions, the error would be to the defendant's benefit and, thus, would gain him nothing. *See State v. Simmons,* 435 A.2d 1090, 1092 (Me.1981); *State v. Stone,* 397 A.2d 989, 995 (Me.1979).

■ In final analysis on this appeal, we must determine whether, from the totality of the evidence presented, the motion justice could have found beyond a reasonable doubt that the defendant's incriminating statements or confessions were voluntary. This Court will not disturb the ruling below if there is evidence in the record providing rational support for the justice's conclusion. *State v. Caouette,* 446 A.2d 1120, 1124 (Me.1982); *State v. Collins,* 297 A.2d at 625.

We find rational support in this record for the Superior Court's conclusion that the defendant's incriminating statements or confessions were voluntary, and this under the standard of proof beyond a reasonable doubt. We further find rational support in this record for the Superior Court's conclusion that "in all other respects, [the defendant's] constitutional rights were not violated," and this under the greater burden of proof beyond a reasonable doubt which the justice below may have applied in his analysis of the evidence.

Indeed, both John Stevens and Officer Budge testified as to the painstaking manner in which the defendant was informed of his rights prior to the first interrogation. Both men were aware that the defendant was "slow" and proceeded accordingly. Stevens first read the *Miranda* warnings in their entirety. When asked if he understood his rights following this initial reading, Knights responded in the affirmative. Stevens then went through the warnings with the defendant, paragraph by paragraph. After reading each paragraph Stevens asked the defendant if he understood, and his answer was in the affirmative. Finally, the defendant was given a *Miranda* waiver form which he signed. Even then, Knights refused to admit responsibility for the fires at the beginning. It was only when Officer Budge, who had known the defendant for many years, exhorted the defendant to tell the truth that the defendant decided to confess. The defendant was also properly given the *Miranda* warnings prior to the second interrogation and again agreed to cooperate with the authorities.

■ The Superior Court had before it substantial evidence of the defendant's level of intelligence, summarized in our previous discussion of the defendant's competency to stand trial. It was for the Superior Court to make the factual determination, whether in light of his intelligence the defendant could be held accountable for his verbal manifestations that he understood his *Miranda* rights. The motion justice's determination that he could be held so accountable was buttressed here by the evidence that the defendant continued to refuse to admit responsibility for the fires even after the *Miranda* warnings were given. From this evidence the Superior Court could reasonably infer that the defendant understood that he was in an adversarial situation and that the authorities could not compel him to talk. *See Gibbs v. Warden of Ga. State Pen., Hardwick, Ga.,* 450 F.Supp. 242, 244–45 (1978). Notwithstanding his statement that "yes" he was willing to talk without a lawyer present, the defendant continued to deny complicity until

Budge intervened and exhorted him to tell the truth.[4]

■ There was also evidence in the record tending to prove that the defendant was not capable of understanding the *Miranda* warnings. Dr. Saunders testified that the defendant "would not understand half of the vocabulary contained within the sentences of the *Miranda*." As with the testimony tending to prove the defendant incompetent to stand trial, the weight and credibility to be attributed to Saunders' testimony were matters committed to the motion justice, sitting as a factfinder. *See State v. Gove*, 379 A.2d 152, 153 (Me.1977). We are mindful that the question whether a particular defendant suffering from a mental defect is capable of a knowing waiver of constitutional rights is an extremely difficult one. We are convinced, however, that it is a question of fact that must be left largely to the discretion of the trial court. Here we find rational support for that court's conclusion.[5]

## II

The defendant next argues that the State failed to disprove beyond a reasonable doubt his defense of duress and that, therefore, the Superior Court erred in denying his motion for judgment of acquittal. *See* 17–A M.R.S.A. § 103–A (1983).[6]

■ We agree that the defendant presented sufficient evidence to place the defense of duress in issue. See 17–A M.R. S.A. § 101 (1983). The evidence of duress consisted primarily of the defendant's statements to John Stevens and his own testimony at trial that he had been threatened by his nephew with a severe beating or death if he did not set the fires. Other witnesses testified that the defendant had complained of beatings and threats from his nephew a year before the fires and also just prior to trial. All of this evidence was based either directly or indirectly on the defendant's own statements. In its role as fact finder the jury was justified in disbelieving the defendant's statements regarding the threats, or in finding that the threats were not such that "a reasonable person in the defendant's situation" would be unable to resist the pressure. 17–A M.R.S.A. § 103–A. *See State v. Lagasse*, 410 A.2d 537, 542 (Me.1980).

■ There was also evidence negating the defense of duress. The defendant told John Stevens that he set the fire charged against him in Count I of the indictment because of a grudge he had against the owner of the building. Furthermore, the fact that the three fires were set over the course of a month permits the inference that the defendant had an opportunity, at least as to the last two fires charged against him in Counts II and III of the indictment, to resist the duress by contact-

---

**4.** While Officer Budge's urging that the defendant tell the truth appears to have been the turning point in the interrogation, it clearly did not amount to coercion. *See State v. Tardiff*, 374 A.2d 598, 601 (Me.1977). Mere admonitions or exhortations to tell the truth will not, by themselves, render a confession involuntary. *Crooker v. State of California*, 357 U.S. 433, 437, 78 S.Ct. 1287, 1290, 2 L.Ed.2d 1448 (1958).

**5.** *See Commonwealth v. Cameron*, 385 Mass. 660, 433 N.E.2d 878, 883 (1982) (waiver of *Miranda* rights by defendant with IQ of 83, on the borderline of mental retardation, found voluntary where defendant was read his rights three times and replied in the affirmative when asked if he understood). *See also Vance v. Bordenkircher*, 692 F.2d 978 (4th Cir.1982) *cert. denied* —— U.S. ——, 104 S.Ct. 114, 78 L.Ed.2d 114 (1983) (even though defendant was fifteen years

old and had a full scale IQ of 62, with moderate mental deficiency, confession voluntary where defendant was advised of his rights, his access to outside adults was not restricted, and police conduct was otherwise proper).

**6.** Section 103–A provides in pertinent part as follows:

*Duress*

1. It is a defense that, when a defendant engages in conduct which would otherwise constitute a crime, he is compelled to do so by threat of imminent death or serious bodily injury to himself or another person or because he was compelled to do so by force.

2. For purposes of this section, compulsion exists only if the force, threat or circumstances are such as would have prevented a reasonable person in the defendant's situation from resisting the pressure.

ing the police. Viewing the evidence in a light most favorable to the State, the jury could rationally conclude beyond a reasonable doubt that in setting the fires the defendant was not compelled to do so by duress. *See State v. Lagasse,* 410 A.2d at 542; *State v. Van Sickle,* 434 A.2d 31, 35 (Me.1981).

### III

Finally, the defendant contends that the State failed to establish the corpus delicti of the arson accusation of Count I of the indictment, because, so it is claimed, the State did not produce, exclusive of the defendant's confession, such credible evidence as will create a substantial belief that the crime charged has been committed by some person, and, if the State did satisfy this first burden, then there was not sufficient evidence on the whole record to establish beyond a reasonable doubt that the defendant committed it. *See State v. Curlew,* 459 A.2d 160, 164 (Me.1983). A careful review of this record satisfies us that the defendant's claim of error is without merit.

The entry is:

Judgment affirmed.

All concurring.