**STATE of Maine**

v.

**Timothy SNOW.**

Supreme Judicial Court of Maine.

Argued June 9, 1986.
Decided July 23, 1986.

R. Christopher Almy, Dist. Atty., Philip Worden, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Marshall T. Cary (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

Timothy Snow appeals from the judgment of the Superior Court, Penobscot County, entered on a jury verdict finding him guilty of aggravated assault with use of a dangerous weapon in violation of 17–A M.R.S.A. § 208(1)(B) (1983). On appeal, Snow contends the trial court erred in 1) denying his motion to suppress statements made by him, 2) failing to make an explicit finding that his statements were voluntary, and 3) instructing the jury on self-induced intoxication. Snow also contends that the jury's finding of his guilt as to the charge of aggravated assault with use of a deadly weapon is logically irreconcilable with its finding that he was not guilty by reason of insanity of the charge of attempted murder, and must therefore be reversed. In addition, Snow challenges the sufficiency of the evidence to sustain his conviction. For the reasons hereinafter set forth, we affirm the judgment.

I

By an indictment returned in April, 1984 Snow was charged in Count I with the attempted murder of Cheryl Chase and in Count II with aggravated assault by causing bodily injury to Chase with use of a dangerous weapon. From the evidence presented at trial the jury rationally could have found the following facts: Snow had been living with Chase and her two children in Chase's apartment in Bangor. On or about March 10, 1984, Chase told Snow that because of his resumed drinking he would have to move out of her apartment in the near future. On the afternoon of March 17, Chase went out briefly. Returning to the apartment, she discovered that Snow had been drinking vodka. She poured the remaining one-half of the contents of the bottle into the sink and asked Snow to leave. Snow left the apartment. At about 6:30 p.m. Chase and her children went out for the evening.

Around 7:00 p.m. Snow telephoned Gary Sites and asked him to come to Chase's apartment. In the hour between Sites' arrival at the Chase apartment and his departure, Snow drank approximately one-half a bottle of vodka. Sites attempted to place Snow in an alcohol treatment program that would have admitted Snow that evening, but Snow refused the offer of admission.

When Chase returned with her children at 10:45 p.m., she discovered Snow in her apartment. When Snow refused to leave, Chase went into the kitchen to telephone the police. Snow came into the kitchen and asked who was on the telephone. Chase did not answer him, but got up from her chair and backed away. Snow picked up a butcher knife and stabbed her in the right arm. Chase screamed. Her children came into the kitchen and screamed. Snow laid the knife on the counter and yelled at the children to leave the kitchen. After the children ran out of the room, Snow again picked up the knife. Chase tried unsuccessfully to keep the table between them. She reached out in an attempt to hold Snow's arm away from her, but "wasn't strong enough." Snow stabbed her in the chest, the knife penetrating the left lung and diaphragm and into the stomach. The entire episode lasted approximately two minutes.

The jury found Snow guilty of aggravated assault, but not guilty, by reason of insanity, of attempted murder.

## II

On the ground of involuntariness Snow moved to suppress statements he had made to Bangor police detective Richard Stockford. After a testimonial hearing the court denied the motion without making an explicit finding that Snow had made the statements voluntarily. Snow contends that the record does not clearly reflect that the ruling was in fact based upon a finding of voluntariness, and the court therefore erred in denying his motion to suppress. We address these issues in order.

■ A. When an accused challenges admission of his statements on the ground of involuntariness, the trial court must make a reliable determination of voluntariness before the statements are considered by the finder of fact. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Although the trial "judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." *Sims v. Georgia*, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967).

> [W]here, as in Maine, by state procedure the trial judge is required to determine voluntariness for the purpose of admissibility of a confession, the simple denial of a motion to suppress will be adequate when the record clearly shows that the ruling was in fact based on the finding of voluntariness.

*State v. Smith*, 415 A.2d 553, 558 (Me. 1980).

■ In the instant case the parties do not dispute that Snow was in custody when he made the statements to Detective Stockford and that Stockford gave Snow the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The testimony at the hearing focused on the related questions of whether Snow voluntarily waived his *Miranda* rights, *see, e.g., North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), and whether he voluntarily made the statements that he sought to suppress.

*See, e.g., State v. Caouette*, 446 A.2d 1120 (Me.1982). *See also State v. Knights*, 482 A.2d 436, 440 (Me.1984) (describing the different standards of proof for a finding of a voluntary waiver of *Miranda* rights and a finding of voluntariness of the statements). Snow attempted to establish the involuntariness of his statements by presenting eyewitness and expert testimony that purportedly showed that he was in an "alcohol blackout" or suffered from "alcohol amnesia" at the time he made the statements. The State presented contradictory testimony. Following the hearing, the court issued an order denying the motion. It is clear from the record that the court rejected Snow's evidence and concluded the statements were made voluntarily. Although it would have been better practice for the court to state explicitly that it found Snow's statements to Stockford to be voluntary and to give its reasons for this conclusion, the finding of voluntariness of the statements appears on the record with the unmistakable clarity required by *Sims v. Georgia. See Smith*, 415 A.2d at 558.

■ B. We turn then to the contention that the court erred in denying the motion to suppress. Snow incorrectly contends that the State must prove beyond a reasonable doubt that any waiver of *Miranda* rights was voluntary. It is in fact the State's burden to demonstrate by the *federal standard of proof by a preponderance of the evidence* that any waiver of *Miranda* rights was made knowingly, understandingly, and voluntarily. *Knights*, 482 A.2d at 440. When, however, the accused claims his statements were involuntary, then the State must establish the voluntariness of the statements *by proof beyond a reasonable doubt. Id.; State v. Collins*, 297 A.2d 620, 627 (Me.1972). The suppression justice's finding of voluntariness of the waiver and the statements must stand unless clearly erroneous. *See State v. Pinkham*, 510 A.2d 520, 522 (1986); *see also Knights*, 482 A.2d at 441 (finding of voluntariness will be sustained "if there is

evidence in the record providing rational support").

██ There is rational support in the record for these findings. Police officers George Estes and Larry Pratt testified that Snow did not appear to have been drinking and that they detected no odor of alcohol. Snow was able to walk and talk normally. After Pratt read him the *Miranda* warnings, Snow replied, "Well, I understand." Snow then stated that he wanted to visit Chase at the hospital and opined that he had not hurt her badly. Before questioning Snow, Stockford again read the *Miranda* warnings to him. Snow responded affirmatively that he understood each one. Stockford then asked Snow whether he wanted to talk about the incident, and Snow replied, "Yes, I do. I want to talk about it." He then proceeded to describe in some detail his relationship with Chase and the events of March 17 prior to the stabbing. He was also able to reflect critically on the stabbing, telling Stockford that he "could" and "should have walked away from it."

The weight and credibility to be attributed to the testimony presented on the suppression motion were matters committed to the determination of the justice hearing that motion. *Knights*, 482 A.2d at 442. We hold that on this evidence the court properly found that Snow had voluntarily waived his *Miranda* rights and had voluntarily made the statements to Stockford and did not err in denying Snow's motion to suppress.

### III

We next address the defendant's contention that the verdict of guilty on Count II (aggravated assault) is logically irreconcilable with the verdict of not guilty by reason of insanity on Count I (attempted murder).

We note preliminarily that we have never held that inconsistent verdicts on separate counts of a single indictment require reversal. We are aware that there is language in *State v. Engstrom*, 453 A.2d 1170 (Me. 1982), that might be construed as suggest-

ing the necessity of a reversal in particular circumstances:

Inconsistent verdicts require reversal only if they are incapable of logical reconciliation.

*Id.* at 1174. This language, however, is clearly dictum since the verdicts under question in that case were capable of logical reconciliation. *See id.* Moreover, we cited as the source of this language, *State v. DiPietro*, 420 A.2d 1233, 1237 (Me.1980), in which we suggested again in dictum that reversal was never required, and *State v. Upton*, 362 A.2d 738, 739 (Me.1976), in which we explicitly reserved judgment on the issue. Based on the consistent holdings of this court, the language in *Engstrom* should have read: Logically reconcilable verdicts are not inconsistent and therefore do not require reversal. This court has never decided that inconsistent verdicts do require reversal. *See State v. Thurlow*, 387 A.2d 22, 24 (Me.1978); *State v. Field*, 379 A.2d 393, 395 (Me.1977); *Upton*, 362 A.2d at 739–40.

We proceed then to examine the verdicts in this case to determine whether they are capable of logical reconciliation.

██ Snow presented as expert witnesses, *inter alia*, Douglas Ewing, Ph.D., a clinical psychologist, and Frederick Webber, M.D., a psychiatrist. Dr. Ewing testified that Snow had a "borderline personality disorder." This nomenclature designates persons who manifest "episodic" psychotic behavior. Such episodes might be transient and brief. Under the influence of alcohol and stress Snow had become psychotic in the past. On the evening of March 17 Snow may have crossed into and out of a psychotic state in a span of two minutes. Dr. Webber testified that there was a "good possibility" that Snow was in a psychotic state on the evening in question, but that he could not determine when this began or ended. Asked which stabbing was the result of psychosis, Dr. Webber replied, "Probably both, but it's difficult to confirm."

Based on this expert testimony the jury could have found that Snow was not in a psychotic state when he stabbed Chase in the arm. It could have also found that the initial stabbing followed by the victim's screaming and the appearance in the kitchen of the children and their screaming may have constituted sufficient stress to trigger a psychotic episode that endured through the second stabbing. *See Upton*, 362 A.2d at 739–40 (jury could have determined that killing the first victim triggered a reaction so that the defendant had no conscious awareness when he shot the second victim although only seconds may have elapsed between the two shootings); *State v. Coleman*, 46 N.J. 16, 214 A.2d 393, 407 (1965) (jury could have concluded that the defendant "went berserk" after the first killing and then aimlessly killed and wounded others).

We hold therefore that the jury's finding that Snow was guilty of an aggravated assault with a deadly weapon is logically reconcilable with its finding that Snow was not guilty by reason of insanity of attempted murder.

### IV

Snow next contends that the court erred in refusing to instruct the jury that self-induced intoxication may raise a reasonable doubt as to the existence of the culpable state of mind of recklessness.

Snow was indicted in Count II for aggravated assault with the use of a dangerous weapon. 17–A M.R.S.A. § 208(1)(B) (1983).[1] Aggravated assault requires the culpable state of mind of acting "intentionally, knowingly, or recklessly." § 208(1). A person acts recklessly "when he consciously disregards a risk." § 35(3)(A), (B).[2] Evidence of intoxication may raise a reasonable doubt as to the existence of a required culpable state of mind. § 37(1). Section 37(2), however, limits the effect of section 37(1):

> When recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he not been intoxicated, such unawareness is immaterial.

§ 37(2).

■ In the instant case the trial court instructed the jury that evidence of self-induced intoxication may raise a reasonable doubt as to intentional or knowing conduct, but not to reckless conduct. Snow contends that this instruction is erroneous. He argues that section 37(2) makes the absence of awareness because of self-induced intoxication immaterial only when *criminal negligence* establishes an element of the offense. *See §. 35(4)(A), (B)* (defining criminal negligence in terms of "fail[ing] to be aware of a risk").

Snow's contention conflicts with the plain language of section 37(2) and misconstrues the statutory definition of recklessness. The culpable state of mind of recklessness is defined in terms of consciously disregarding a risk. § 35(3)(A), (B). The conscious disregard of a risk under section 35(3) presupposes that the person is aware of the risk. When a person would have

---

1. Section 208(1)(B) provides:
    1. A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes:
    ....
    B. Bodily injury to another with use of a dangerous weapon.
2. Section 35(3) provides:
    3. "Recklessly."
    A. A person acts recklessly with respect to a result of his conduct when he consciously disregards a risk that his conduct will cause such a result.

    B. A person acts recklessly with respect to attendant circumstances when he consciously disregards a risk that such circumstances exist.
    C. For purposes of this subsection, the disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the ,circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

been aware of the risk but for self-induced intoxication, his "unawareness is immaterial," § 37(2), and his conduct is treated as the equivalent of consciously disregarding a risk. As we noted in *State v. Barrett,* 408 A.2d 1273 (Me.1979):

> Self-induced intoxication is explicitly unavailable as a defense to a crime where the culpable mental state is recklessness.

*Id.* at 1276 (construing § 58–A, the predecessor provision to the present § 37). There was no error in the instruction on self-induced intoxication.

Finally, we address Snow's contention that the evidence was insufficient to support a finding that he acted with the culpable state of mind requisite for a conviction of aggravated assault. Viewing the evidence in the light most favorable to the prosecution, we hold that the trier of fact could rationally find that element of the offense beyond a reasonable doubt. *See State v. Murphy,* 496 A.2d 623, 629–30 (Me.1985) (evidence sufficient to justify a finding of an intentional state of mind).

The entry is:

Judgment affirmed.

All concurring.