**STATE of Maine**

**v.**

**Dennis VOTER.**

Supreme Judicial Court of Maine.

July 28, 1978.

Charles K. Leadbetter (orally), James E. Smith, Asst. Attys. Gen., Augusta, for plaintiff.

Beliveau & Beliveau, P.A. by Severin M. Beliveau (orally), Rumford, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD and GODFREY, JJ.

. . . .."

GODFREY, Justice.

Appellant Dennis Voter was indicted by a Franklin County grand jury for first-degree homicide. After a jury-waived trial, he was found guilty of homicide in the second degree under 17–A M.R.S.A. § 202.[1] Appellant moved for acquittal at the close of the State's case and at the close of all the evidence. Appellant appeals from the conviction, asserting that the evidence was insufficient to justify it. We deny the appeal.

■ In reviewing the sufficiency of the evidence to support the finding of the trial court, the Law Court must examine the record in the light most supportive of the finding. In order to set aside the decision, we must find, when we examine the evidence in this light, that the fact-finder could not have reasonably found guilt beyond a reasonable doubt. *State v. Mann,* Me., 361 A.2d 897 (1976). Under the version of the statute in effect at the time of the incident, the trial court was required to find that appellant caused the death and that he either intended to cause death or knew that death would almost certainly result.

■ The facts brought out at trial indicate that appellant was a father-surrogate for the deceased, seven-year-old Tina Franks. On May 6, 1976, appellant was looking after the five children of Marianne Franks while their mother was at work. One of Tina's sisters reported to appellant that Tina had failed to hang up her coat. The testimony indicated that Tina was innocent and that the coat had fallen from its hanging place. Mr. Voter proceeded to subject Tina to water punishment.

The testimony of the deceased's sisters indicated that Tina was forced to drink water. After she had consumed three-quarters of a gallon jug, appellant forced water upon her. He tied her hands behind her back with a belt and poured more water down her throat while a sister held Tina's mouth open. Tina was crying during this procedure and soiled her pants after she was denied permission to go to the bathroom. In all, Tina was forced to drink two gallons of water, less some water that was spilled in the process. Tina was then forced to clean up the mess that was made. Appellant was quoted as saying during the punishment, "I don't care if it kills you, you're going to drink the water."

Tina ate strawberry shortcake for supper and went to bed. Later she woke up because of dizziness. She walked around the house staggering and talking to pans. Appellant had one of her sisters help her to keep walking. When she sat on the floor appellant kicked her and pulled her up by her hair. Later, Tina went into convulsions, vomited, and went into shock. An ambulance was summoned, and Tina was taken to the hospital. Appellant did not tell the ambulance attendants that Tina had ingested a large quantity of water. When questioned by doctors at the hospital, he related in detail what had happened to Tina in the last few days but did not mention the water punishment.

Extensive medical evidence was introduced which showed that Tina suffered from aspiration pneumonitis due to vomit matter in her lungs and water intoxication in the brain. She died as a result of one or both of these conditions.

Evidence was introduced from which the Court could infer that appellant harbored ill will toward Tina. The testimony indicated that in the past his punishment of Tina had included suspending her in the air by a rope around her leg, forcing her to eat dogfood, and making her stay in bed for days, rubbing her face in her own feces, holding her head under water in a sink and forcing her to eat human manure. There was also evidence that after Tina's death he threatened to do the same thing to Tina's sisters that he had done to Tina if they "didn't smarten up."

Evidence was also introduced tending to show that appellant knew the water punishment was almost certain to cause death. On an earlier occasion he had used the

---

1. Repealed and replaced, P.L.1977 ch. 510, § 39.

water punishment with less than a gallon of water. The evidence showed that at that time he had witnessed violent response to *the ingestion of water, including vomiting,* trembling and staggering.

On the basis of the evidence, we conclude that it was not unreasonable for the trial court to find beyond a reasonable doubt that appellant conducted himself with intent to cause death or while knowing that death would almost certainly result. The medical testimony was sufficient to establish that the death was caused by the water punishment.

The entry is:

Appeal denied.

Judgment affirmed.

DELAHANTY and NICHOLS, JJ., did not sit.