**STATE of Maine**

v.

**Clayton J. BARRETT, Jr.**

Supreme Judicial Court of Maine.

Dec. 12, 1979.

Michael E. Saucier (orally), Asst. Atty. Gen., Augusta, Roger Flaherty, Asst. Dist. Atty., Alfred, for plaintiff.

Ellsworth Rundlett, III (orally), Portland, for defendant.

Before McKUSICK, C. J., POMEROY, WERNICK and ARCHIBALD, JJ., and DUFRESNE, A. R. J.

POMEROY, Justice.

Appellant was indicted by the York County Grand Jury on a single count for violations of, alternatively, 17–A M.R.S.A. § 802(1)(A) or § 802(1)(B)(2),—arson.[1] He

---

1. § 802. Arson

    1. A person is guilty of arson if he starts, causes, or maintains a fire or explosion;

    A. On the property of another with the intent to damage or destroy property thereon; or

attempted to plead nolo contendere but that plea was rejected by the Court. The Court also rejected a subsequent plea of guilty. Appellant was found guilty at a jury trial and sentenced to 2½ years at the Maine Correctional Center. He raises two issues on this appeal:

(1) whether the evidence was sufficient to support the jury's finding beyond a reasonable doubt that defendant was guilty; and

(2) whether the court erred in refusing to give defendant's requested instruction as to the intoxication defense and whether the instructions given were confusing, misleading and prejudicial.

We deny the appeal.

On March 9, 1978, defendant and his wife quarreled over a land purchase they were contemplating. During that afternoon defendant was drinking beer steadily. In the evening, the quarrel having continued, his wife went next door to the other half of the duplex where her brother and his wife lived. Defendant sought her out there, forced his way in, and was escorted back home by his wife's brother. Defendant's wife later returned home with a police officer who had been called, and found their bedroom in disarray. She and the officer then left.

Some twenty minutes later defendant was seen driving away from the home. Immediately thereafter, flames were seen in the defendant's bedroom, and the duplex was evacuated. Subsequent investigation revealed several separate fires in the bedroom.

In preparation for trial defendant consulted a clinical psychologist who testified that defendant suffered from *"episodic alcoholism"*, and that during these episodes he lacked substantial capacity to conform his conduct to the requirements of the law. The episodic alcoholic, he explained, drinks excessively on a few occasions each year, and when so doing may be violent or self-destructive, experience memory lapses, and lose cognitive control.

■ Defendant made a motion for judgment of acquittal at the close of all the evidence, which motion was properly denied. Viewing the evidence in the light most favorable to the prosecution,[2] we find ample evidence to support the factfinders' finding of guilt, on either alternative in which the crime was charged. There was evidence as to defendant's motive for setting the fire: the domestic dispute and his hostility toward his neighbors. The evidence established that defendant was present in the building at the time the fire began, and fled the scene at the time of the fire's discovery. The State's expert witness, an arson investigator with the Maine State Police and State Fire Marshall's Office testified that the facts were inconsistent with natural combustion or an accidental fire, and clearly indicated to him that the fire had been set. This testimony was in part corroborated by a second expert witness for the State. From this evidence the jury could rationally conclude beyond a reasonable doubt that the defendant had set the fire.

■ The defendant also contends, however, that the evidence failed to establish that he acted with the state of mind required for commission of the crime of arson. This contention is based on the defense of self-induced intoxication. 17–A M.R.S.A. § 58–A.[3] That defense by its terms is only

---

B. On his own property or the property of another

(1) . . .

(2) in conscious disregard of a substantial risk that his conduct will endanger any person or damage or destroy the property of another.

**2.** *See, e. g., State v. Voter*, Me., 388 A.2d 923, 924 (1978).

**3.** § 58–A. Intoxication

1. *Intoxication is not a defense unless it establishes a reasonable doubt as to the existence of an element of the offense.*

2. *When recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he not been intoxicated, such unawareness is immaterial.*

effective if it establishes a reasonable doubt as to the existence of an element of the offense, e. g., as to the possession of the requisite culpable mental state, if that mental state is intention or knowledge. Self-induced intoxication is explicitly unavailable as a defense to a crime where the culpable mental state is recklessness. Even if that intoxication causes the actor to be *"unaware of a risk of which he would have been aware had he not been intoxicated, such unawareness is immaterial."* 17–A M.R.S.A. § 58–A(2).[4]

∎ Under one alternative in which the crime was charged, the State had to prove that the fire was set *"with the intent to damage or destroy property . . .",* that is *"intentionally"* under the Code definitions of culpable states. 17–A M.R.S.A. § 10(1)(A).[5] Self-induced intoxication is available as a defense to this manner of committing arson. Once evidence was admitted at trial sufficient to generate the issue, the State had the burden of disproving the existence of the defense beyond a reasonable doubt, 17–A M.R.S.A. § 5(2)(B); that is, the State had to prove either that defendant was not intoxicated, or that, even if he were, that intoxication was not such that it prevented defendant from acting intentionally in setting the fire.

We find sufficient evidence that the jury could have found that the State had met its burden.

The evidence as to whether or not defendant was intoxicated at the time of the commission of the crime is conflicting. The jury could have found that the defendant had consumed anything from part of a *"six-pack"* to five or more *"six-packs"* of beer during the six hours preceding the fire. Defendant's brother-in-law, his wife, and a police officer, who saw defendant shortly before the incident, all testified that though defendant had been drinking, he was not highly intoxicated. The police officer did state, however, that if he had stopped the defendant in a motor vehicle, he would have arrested defendant for driving under the influence of intoxicating liquor. An attempt was made to impeach the brother-in-law's testimony. Although defendant did not testify that he was drunk, he did say that he couldn't remember anything that happened from about 10:00 p. m. (approximately fifteen minutes before the fire broke out) until he was being questioned at the police station some four hours later. From this testimony, if believed, coupled with the psychologist's testimony, one might have inferred that defendant was intoxicated.

∎ Judging the credibility of the witnesses and weighing their testimony is the province of the factfinder. On the evidence, a reasonable juror could have found beyond a reasonable doubt that defendant was not intoxicated within the meaning of 17–A M.R.S.A. § 58–A(3)(A).

Even if the jury found that defendant was *"intoxicated,"* they need not have found that that intoxication affected his ability to have as a conscious object to cause the results of his conduct. Indeed, even if

---

3. *As used in this section:*
   A. *"Intoxication" means a disturbance of mental capacities resulting from the introduction of alcohol, drugs or similar substances into the body; and*
   B. *"Self-induced intoxication" means intoxication caused when the actor intentionally or knowingly introduces into his body substances which the actor knows or ought to know tend to cause intoxication, unless he introduces them pursuant to medical advice or under such duress as would afford a defense to a charge of crime.*

4. This provision embodies a principle enunciated in *State v. Rice,* 379 A.2d 140, 143, n. 1: *the traditionally operative principle, reflecting demands of public policy, . . .* [is]

*that a person's choice to impair his usual behavioral functioning by the consumption of alcohol . . . generally will be denied recognition as a circumstance of palliation for criminal behavior . . . .. State v. Rollins,* Me., 295 A.2d 914, 920 (1972) (emphasis in original).
That self-induced intoxication is allowed as a defense for crimes which may be committed intentionally or knowingly represents a departure from that traditional principle.

5. 17–A M.R.S.A. § 10(1)(A) provides:
   *A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result.*

the jury believed the defendant's own witness who testified that defendant was an episodic alcoholic, that would not be inconsistent with a finding that he started the fires *"[o]n the property of another* [his landlord's] *with the intent to damage or destroy property thereon."* 17–A M.R.S.A. § 802(1)(A). The Court, tracking the language of the Maine Code with respect to intentional conduct specifically asked the psychologist who testified for defendant about his ability to *"intend"*:

> The Court: I have one final question. Doctor, would an episodic alcoholic who was intoxicated be able to perform a conscious act or purpose of damaging or destroying property?

> The Witness: If the law refers to property in the sense of the immediate environment, yes, the person can decide to strike something, destroy something in his presence.

The jury had further grounds on which to base a conclusion of intentional action here. According to the testimony of the police officer who accompanied defendant's wife to the duplex to talk with him, defendant told his wife, as she and the officer were leaving, that *"if she did not come back and stay that night, he was going to do harm to himself or damage the house."* The jury could have inferred that defendant acted on this threat prematurely in setting fire to the house some fifteen minutes later. His leaving the scene immediately thereafter is further evidence relevant to whether or not he understood the result of his conduct, i. e., the potential of the fire to destroy.

As will be discussed below, self-induced intoxication was not available as a defense to the commission of arson under the second manner in which arson was charged. That charge was starting the fire

> with a conscious disregard of a substantial risk that his conduct would endanger persons within including his wife . . and child.

The evidence is clear that the defendant knew that his wife and child, as well as his step-daughter, in-laws, and some neighbors, were in the other half of the duplex structure a short time before the fire was set. Defendant had been in that side of the structure when he went looking for his wife. One could also logically infer that defendant knew that the room in which he started the fire shared a wall with the other half of the duplex. This evidence is sufficient for a jury to have found that there was a substantial risk from the fire to the persons in the other half of the duplex, and that defendant knew of this risk and set the fire in conscious disregard thereof.

■ We now turn to the second issue raised on this appeal. It concerns the instruction given by the Court below in the intoxication defense. As a preliminary matter, the State suggests that this issue has not been properly preserved for appeal in that the exact language of the requested instruction does not appear in the record. There is no question from the record, however, that defendant complied with R. 30(B), M.R.Crim.P. It is clear from the transcript of the in-chambers conference with counsel, prior to the giving of the charge, that defendant submitted a requested jury instruction on intoxication; that he objected, when the Court said that it would not give that instruction; that he asked that the requested instruction be made a part of the record; and that he renewed his objection at the close of the instructions to the jury. While it would have been preferable had defendant made certain that the text of the requested instruction appeared in the record, the record does include

> all that is necessary to enable the Law Court to decide whether the rulings of which he complains were or were not erroneous. State v. Gagnon, Me., 383 A.2d 25, 27.

■ It is clear that the requested instructions used the term *"voluntary intoxication"* rather than the term *"self-induced intoxication,"* which appears in 17–A M.R.S.A. § 58–A, and which term the Superior Court Justice used in his charge. Furthermore, it is clear that defendant objected to the instruction on intoxication not being given with respect the second manner in which arson was charged, as well as the

first. Defendant argued that the trial Justice should charge that the *"conscious disregard of a substantial risk"* language used in 17–A M.R.S.A. § 802(B)(2) should be equated with the culpable state of mind of *"knowledge,"* rather than of *"recklessness"*; and, therefore, the intoxication defense should be available. The trial Justice properly denied the requested instruction on both of these points.[6]

The trial Justice is to be commended for using the terminology of the Code, i. e., *"self-induced intoxication"* rather than the term *"involuntary intoxication"* requested by defendant. Although merely tracking the language of the Code may not always provide sufficient instruction, it promotes both adherence to and understanding of the Criminal Code to instruct the jury in its terms.

■ The second point, concerning requisite culpable state of mind, is more significant. We agree with the interpretation of the trial Justice. He stated that for purposes of determining the applicability of the defense of self-induced intoxication to arson under 17–A M.R.S.A. § 802(1)(B)(2) the language *"consciously disregards a substantial risk"* is equivalent to that portion of the definition of *"recklessly"* which reads *"consciously disregards a risk."* This interpretation is supported by several factors.

First, the definition of *"recklessly"* in 17–A M.R.S.A. § 10, as originally adopted, read:

> A person acts recklessly with respect to a result of his conduct when he consciously disregards a <u>substantial and unjustifiable</u> risk that his conduct will cause such a result. (Emphasis added).

The underscored words were deleted by a 1977 amendment included in a general Criminal Code Revision Act. The arson section was not amended at that time. The current deviation in language of the arson section from the code definition of *"recklessly"* is apparently, as the trial Justice suggested, just an *"accident of the Code amendments."*[7]

Second, as the State pointed out at trial, the definition of *"disregard of the risk"* set forth at 17–A M.R.S.A. § 10(3)(C) was not substantially changed when the statute was amended to delete the modifiers *"substantial and unjustifiable."* Both before and after the 1977 amendment, the language is identical that the definition of *"recklessly"* is met if, considering *"the nature and purpose of the person's conduct and the circumstances known to him"*, the disregard of the risk involves *"a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation."* As the defendant himself so aptly put it in objecting to the treatment of the *"substantial risk"* language as denot-

6. It also appears from the defendant's brief on appeal that the requested instruction would have been inappropriate because of its use of the term *"specific"* with respect to *"conscious intention"* and *"knowledge"*. This term evokes the concepts of *"specific intent"* and *"general intent"*. These terms were deemed *"obscure"* and *"unsatisfactory"* by the drafters of the Model Penal Code, who deliberately abandoned them. *See,* American Law Institute (ALI), *Model Penal Code: Reprint—Tentative Drafts Nos. 1, 2, 3, and 4,* Comments § 2.02 (1953) and *Reprint—Tentative Drafts Nos. 8, 9, and 10,* Comments § 2.08 (1958). The ALI adopted the concept of *"culpable states of mind"* instead. The drafters of the new Maine Criminal Code followed the A.L.I. Model in this, as in most other respects. *See,* 17–A M.R.S.A. § 10. The use of the terms *"specific intent"* and *"general intent"* should be avoided in dealing with the new Code.

7. The trial Justice elaborated:

> *Initially wrecklessness [sic] was defined as the disregard of the substantial and unjustifiable risk. In the present Code existing at the time this offense was committed the Code had been amended to eliminate the words substantial and unjustifiable risk. So—but they never did change the arson section. I think that's what happened. I think that needs to be changed to bring it in line with the definition of wrecklessness [sic] but I think the intent is clear of the Legislature that they intended this to mean wreckless [sic] and it is true that as a result of the accident of not bringing the arson section in line with the recent change to Section 10 of the Code a motion to dismiss an indictment that omitted the word substantial would lie, but the intent that seems to the Court is that what they're talking about is wreckless [sic] conduct as defined in Section 10.*

ing a reckless state of mind, recklessness, after the amendment, "*is the disregard of a risk, substantial or otherwise.*" This is correct. The effect of the amendment was to broaden the type of risk, the disregard of which would be deemed "*reckless*" conduct, not to exclude substantial risks from that definition.

■ Finally, as the trial Justice noted, there are only four culpable states of mind set out in the Code, and the culpable mental state defined in the statute should be equated to one of these four. It most closely approximates the definition of "*recklessness.*" The Comment to 17–A M.R.S.A. § 802 further supports the conclusion that it was the intention of the drafters, that commission of the crime of arson under subsection (1)(B)(2) could be found from the prohibited conduct coupled with a "*reckless*" state of mind. That comment states:

> *This section* [Subsection B] *is graded on the basis of dangers created solely in order to collect on insurance or in* reckless *disregard to the dangers posed to other persons on their property.* (Emphasis added)

Had the drafters used the term "*reckless disregard*" in the arson section, rather than tracking the language of the definition of reckless, there would have been an automatic change in the statute with the 1977 amendment to the definition of reckless. This would have simplified matters. Under the circumstances, however, this Court will treat the crime of arson under § 802(1)(B)(2) as requiring "*recklessness*" as a culpable mental state; for this reason the defense of self-induced intoxication is not applicable.

We find no merit to the claim that the instructions given were confusing, misleading, and prejudicial. On the contrary, though the legal issues involved are rather complex, the instructions were accurate and very thorough.

The entry is:

Appeal denied.

Judgment affirmed.

DELAHANTY, GODFREY and NICHOLS, JJ., did not sit.

DUFRESNE, A. R. J., sat by assignment.