STATE of Maine

v.

Walter BORUCKI.

Supreme Judicial Court of Maine.
Argued Jan. 22, 1986.
Decided Feb. 20, 1986.

David W. Crook, Dist. Atty., Alan P. Kelley, (orally), Deputy Dist. Atty., Augusta, for plaintiff.

Sherman & Sandy, Robert E. Sandy, Jr., (orally), Waterville, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

Walter Borucki appeals from the judgment of the Superior Court, Kennebec County, entered on a jury verdict finding him guilty on two counts. Count I involved a charge of gross sexual misconduct in violation of 17–A M.R.S.A. § 253(1)(B) (Supp.1985–1986). Count II involved a charge of unlawful sexual contact in violation of 17–A M.R.S.A. § 255(1)(C) (Supp. 1985–1986). Borucki contends, *inter alia,* that his conviction on each count is barred by the statute of limitations and by a variance between the bill of particulars and the proof and that the State's use on cross-examination of a statement suppressed as involuntary constitutes reversible error. We hold that the evidence is insufficient to establish beyond a reasonable doubt that the conduct alleged in Count II occurred within the statute of limitations. Accordingly, we vacate the judgment and direct the entry of a judgment of acquittal on that count. We also vacate the judgment on Count I because the use of the suppressed statement constituted manifest error.

### I. *Statute of Limitations*

On March 28, 1984, the State filed a complaint in District Court, charging Borucki with Class A gross sexual misconduct committed "on or about April 14, 1978." A warrant of arrest was issued and executed. On April 3, 1984, the grand jury, Kennebec County, indicted Borucki in Count I for Class A gross sexual misconduct and in Count II for Class C unlawful sexual contact.[1] Borucki filed motions to dismiss

---

1. A third count alleging sexual abuse of a minor, 17–A M.R.S.A. § 254 (1983 & Supp.1985–

both counts as barred by the statute of limitations and for a bill of particulars. After a hearing in September, 1984 the court denied the motion to dismiss, but ordered the State to provide particulars as to the time and place. The State then filed a bill of particulars specifying that the conduct charged in Counts I and II occurred "at the residence of the Defendant, or proximity, in mid-April, 1978."

The case came on for jury trial in December, 1984. The victim testified that the conduct had occurred in April, 1978 without specifying either a date or a range of dates.

17–A M.R.S.A. § 8(1) (1983) provides that "*[i]t is a defense* that prosecution was commenced after the expiration of the applicable period of limitations provided in this section" (emphasis added). A prosecution for a Class A, B or C crime "must be commenced within 6 years after it is committed." § 8(2)(A). For purposes of the statute of limitations "[a] prosecution is commenced when a complaint is made or an indictment is returned, *whichever first occurs.*" § 8(6)(B) (emphasis added). Because the statute of limitations is "a defense," the State is not required to negate the possibility that the offense was committed outside the statute "unless the existence of the defense ... is in issue as a result of evidence admitted at the trial which is sufficient to raise a reasonable doubt on the issue." § 101(1). The State must then "disprove its existence beyond a reasonable doubt." *Id.*

In the instant case the filing of the complaint in District Court on March 28, 1984, by commencing the prosecution on Count I (gross sexual misconduct), tolled the statute of limitations on that count. *See* § 8(6)(B). The statute was not tolled on Count II (unlawful sexual contact), however, until the April 3 indictment commenced the prosecution on that count. *See id.* The dates of April 1 and 2, 1978, are outside the statute of limitations on Count II.[2] The victim's testimony that the offenses occurred in April generated a reasonable doubt as to whether the offense charged in Count II was within the statute of limitations. *See State v. Glidden,* 487 A.2d 642, 644 (Me.1985) (" 'evidence ... sufficient to raise a reasonable doubt on the issue' means evidence sufficient to make the existence of all the facts constituting the defense a reasonable hypothesis for the factfinder to entertain"). Since the State introduced no evidence that might have disproved the defense, the jury could not rationally have found beyond a reasonable doubt that the offense occurred within the statute of limitations. Accordingly, we vacate the judgment and direct entry of a judgment of acquittal as to Count II.

As to Count I, the testimony at trial did not generate a reasonable hypothesis that the offense had occurred more than six years prior to the filing of the complaint that tolled the statute. The defendant, however, argues that his conviction on this count is also barred. He first contends that the Maine constitutional right to an indictment, Me.Const. art. I, § 7, requires the prosecution of crimes other than Class

1986), with the consent of the defendant, was dismissed by the State at the end of its case in chief because of variance between the proof and the bill of particulars.

2. The State contends the two counts involved the same course of conduct. We note, however, that a defendant is prosecuted for a statutorily defined crime, not a course of conduct. We further note that the statute of limitations does not bar a conviction of a lesser included offense although the period of limitation has expired for the included offense if as to the offense charged the period of limitation has not expired. 17–A

M.R.S.A. § 8(7) (1983). This provision is not, however, applicable to the instant case. Here the defendant was charged with two offenses and convicted of both. Moreover, unlawful sexual contact is not a lesser included offense within Class A gross sexual misconduct. While gross sexual misconduct involving a victim under age 14 includes no mens rea requirement, § 253(1)(B), unlawful sexual contact, § 255(1)(C), includes a mental element of intent. *Cf. State v. Ashley,* 490 A.2d 226, 228–29 (Me.1985) (assault not a lesser included offense within Class A gross sexual misconduct).

D or E crimes to commence by indictment and that the prosecution of Count I did not commence therefore until the indictment on April 3. We find no support in the language of article I, § 7,[3] or in our case law [4] for this proposition. The right protected by article I, § 7 is secured if there is a valid indictment or a defendant's valid waiver of the indictment although a complaint has commenced the prosecution. Moreover, since the Legislature could by statute expand or reduce the limitation period without violating the constitutional right to an indictment, that right is not implicated by the statutory provisions relating to the tolling of the limitation period.

We hold therefore that the statute of limitations does not bar the defendant's conviction on Count I.

## II. *Bill of Particulars*

In addition, the defendant contends there was a fatal variance between the bill of particulars and the proof. While the bill specified "mid-April, 1978," the victim's testimony simply referred to April of 1978.

■ A bill of particulars serves to protect a defendant against double jeopardy, to provide him with sufficient detail that he may prepare a defense, and to avoid prejudicial surprise at trial. *State v. Wedge*, 322 A.2d 328, 330 (Me.1974). *See also State v. Cote*, 444 A.2d 34, 36 (Me.1982). A bill of particulars affects the scope of the State's proof at trial and renders it subject to the principle of fatal variance. *See State v. Benner*, 284 A.2d 91, 98 (Me.1971). All

variances, however, are not fatal. "[I]n order to justify the reversal of a conviction because of a variance between the specifications and the proof it is incumbent on the defendant to demonstrate that the variance has caused him prejudice." *Wedge*, 322 A.2d at 332.

■ In the instant case, the defendant has failed to show prejudice from the variance. The bill of particulars provided the defendant with sufficient detail of time and place to prepare his defense. Since the statute of limitations has run on Class A, B, or C crimes committed in April, 1978, for which no prosecution has yet commenced, there can be no contention of double jeopardy. *Cf. United States v. Francisco*, 575 F.2d 815, 819 (10th Cir.1978). Finally, the defendant has shown no prejudicial surprise at trial. For example, he has failed to show how his cross-examination would have differed if the victim had testified that the misconduct occurred in mid-April. *See United States v. Birrell*, 447 F.2d 1168, 1171 (2d Cir.1971), *cert. denied*, 404 U.S. 1025, 92 S.Ct. 675, 30 L.Ed.2d 675 (1972). He did not ask for a continuance to prepare his defense to unexpected testimony. *Francisco*, 575 F.2d at 819. There is no showing that the variance negated an alibi defense.[5] *See State v. Littlefield*, 219 A.2d 755, 758 (Me.1966). In the absence of a showing of prejudice we hold that the variance between the specifications and the proof is not fatal.[6] *See Wedge*, 322 A.2d at

---

**3.** Article I, § 7 provides in pertinent part: "No person shall be held to answer for a capital or infamous crime, unless on a presentment or indictment of a grand jury." This provision does not by its terms require a prosecution to *commence* by indictment. Nor does it proscribe legislative enactment of limitation periods or tolling provisions.

**4.** The defendant relies on *Ex parte Gosselin*, 141 Me. 412, 44 A.2d 882 (1945), *appeal dismissed*, 328 U.S. 817, 66 S.Ct. 982, 90 L.Ed. 1599 (1946), in which we indicated in dictum that an indictment "is requisite to the commencement of prosecution" when the offense charged is punishable by imprisonment of a year or more. *Id.* at 416, 44 A.2d at 883. *See also id.* at 415, 44 A.2d at 883. *Gosselin* concerned the classifica-

tion of an indeterminate sentencing statute, not the statute of limitations. *Id.* at 414–16, 44 A.2d at 882–83.

**5.** We note the defendant's testimony that he was out of town with his wife on April 15 and 16, 1978. However, if the victim had testified to the specified time period of mid-April, the defendant's testimony as to these two days would not have served as an alibi for the entire period.

**6.** *State v. Littlefield*, 219 A.2d 755, 758 (Me. 1966), suggested that the State must prove beyond a reasonable doubt the time specified in the bill of particulars. *See also State v. Benner*, 284 A.2d 91, 98 (Me.1971), quoting *Littlefield*, 219 A.2d at 758. *State v. Wedge*, 322 A.2d 328

329, 332 (no prejudice shown although bill of particulars specified "between 5:00 p.m. and 11:00 p.m. on May 18," and the only testimony was that the crime had been committed "in the afternoon" of May 18); *Francisco*, 575 F.2d at 816–19 (no prejudice shown although bill specified "late November or early December," and the trial testimony placed the event in a three-month range from October through December).

We hold therefore that the variance from the bill of particulars does not bar the defendant's conviction on Count I.

### III. *Use of Suppressed Statement*

On March 21, 1984, a week prior to his arrest, the defendant was interviewed by two police detectives. Following his arrest, the defendant moved to suppress the statement he had given at that interview. The record of the suppression hearing discloses that the court made an oral finding that the defendant's statement was not voluntary and granted his motion to suppress. We note at the outset that any issue as to whether this finding was erroneous is not before us. The State did not avail itself of the mechanism provided by 15 M.R.S.A. § 2115–A (1980 & Supp.1985–1986) to appeal the order and has not otherwise contested the finding.

In its subsequent written order the court, without specifying the ground for suppression, stated that the defendant's motion to suppress was granted and that the State could not use the statement as a part of its case in chief. Because due process requires that a confession shown to be involuntary may not be used for any purpose, the limited scope of the suppression order was erroneous. *Mincey v. Arizona*, 437 U.S. 385, 396–402, 99 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *State v. Melvin*, 390 A.2d 1024, 1031 (Me.1978). However, so long as the State did not use the statement, the error was harmless. *See* M.R.Crim.P. 52(a). It was also unpreserved because the

defendant never requested the court to correct the order. *See* M.R.Crim.P. 36; D. Cluchey & M. Seitzinger, 1 *Maine Criminal Practice* § 36.1 (1985) ("the orders of the court ... may be amended to reflect what was actually done").

At trial the State used the involuntary statement on cross-examination of the defendant to impeach his credibility. The defendant did not object to the questions or bring to the attention of the court the finding of involuntariness or the suppression order.

The State contends that the conviction should not be set aside despite its use of the involuntary statement. First, the State notes that it was represented at the suppression hearing by a prosecutor other than the prosecutor who appeared at trial, whereas the same defense counsel appeared at both proceedings. We ascribe no significance to these facts. The district attorney and the assistant district attorneys act as counsel for the State. 30 M.R.S.A. § 454 (1978), § 554–A(1) (Supp.1985–1986). The district attorney "or someone acting under his direction shall be responsible for the prosecution of all criminal cases." § 502 (1978). When a federal prosecutor claimed to be unaware of a promise of immunity made by a member of his staff, a unanimous Supreme Court declared:

> The prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed ... to the Government.

*Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104, 109 (1972). *See also* Standards for Criminal Justice § 3–1.1(a) (2d ed.1980) ("The office of prosecutor is charged with responsibility for prosecutions in its jurisdiction."). There can be no contention that the assistant district attorney's knowledge of the finding

(Me.1974), also involved a variance in time. We refused, however, to vacate the judgment because the defendant failed to demonstrate prejudice. *Id.* at 332. We distinguished *Littlefield*

because there the variance worked prejudice by undermining "unshaken" alibi evidence. *Id.* at 331.

of involuntariness was not the knowledge of the State. *Cf.* M.R.Crim.P. 16(b) (discovery obligation of State's attorney "extends to matters within the possession or control of any member of his staff"); *State v. One 1977 Blue Ford Pick-Up Truck,* 447 A.2d 1226, 1230–31 (Me.1982) (notice of judgment provided to the district attorney's office constitutes notice to the district attorney).

 Second, the State contends that if its use of the suppressed statement in cross-examination of the defendant constitutes error, it was harmless. The State correctly notes that in light of the defendant's failure to object the conviction may be set aside only if the use of the involuntary statement constituted obvious error affecting substantial rights. M.R.Evid. 103(d); M.R.Crim.P. 52(b). "The 'obvious error' test calls for the reviewing court to apply its best judgment to all the circumstances of the case at hand to determine whether inadmissible evidence received at trial without objection was in its probable effect upon the jury 'a seriously prejudicial error tending to produce manifest injustice.'" *State v. True,* 438 A.2d 460, 467 (Me.1981), quoting *State v. Baker,* 409 A.2d 216, 219 (Me.1979). The appellate court must be reluctant to reverse a judgment on the basis of an error not brought to the attention of the trial court. Weighing all the circumstances, we must determine whether the obviousness of the error and the seriousness of the injustice are so great we "cannot in good conscience let the conviction stand." *True,* 438 A.2d at 469.

 Here the written order of the suppression hearing justice was erroneous as a matter of law, violating unambiguous decisions of this court and the United States Supreme Court. The use of the suppressed statement at trial was highly prejudicial. The State questioned the defendant as to whether during the police interview he had (a) denied the existence of certain identifying marks on his body that could not have been seen on a fully clothed person, (b) claimed to have an active sex life with his wife, and (c) stated that the victim had offered herself to him for money. By these questions the State strongly suggested that the defendant had made a series of statements on direct examination that were inconsistent with statements he had made to the police. The questions further suggested that the defendant had attempted to deny the identifying body markings and to create justifications or alibis. In light of the nature of the charges and the extended period of years between the events and the trial the issue before the jury essentially involved the relative credibility of two witnesses, the victim and the defendant. Thus, the State's extensive improper questioning served to undermine sharply the defendant's credibility at a trial in which credibility was the decisive issue.

In light of the decisive significance here of credibility we cannot say on these facts that the jury would have found the defendant guilty in the absence of the State's use of the involuntary statement. *True,* 438 A.2d at 469. Since a "reasonable possibility" exists that a different verdict would have resulted if the involuntary statement had not been used, we find manifest error and accordingly vacate the judgment. *See State v. Michaud,* 473 A.2d 399, 404 (Me. 1984), quoting *State v. Bahre,* 456 A.2d 860, 865 (Me.1983).

The entry is:

Judgment of conviction on Count I vacated; remanded to the Superior Court for further proceedings consistent with the opinion herein. Judgment of conviction on Count II vacated; remanded to the Superior Court for entry of judgment of acquittal.

All concurring.