STATE of Maine

v.

Peter FLEWELLING.

Supreme Judicial Court of Maine.

Argued March 6, 1987.

Decided April 27, 1987.

David W. Crook, Dist. Atty., William Baghdoyan (orally), Skowhegan, for plaintiff.

Robert E. Sandy, Jr. (orally), Sandy & Sandy, Waterville, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

Peter Flewelling appeals from a judgment entered on a jury verdict in the Superior Court (Somerset County) convicting him of aggravated assault (Class B), 17–A M.R.S.A. § 208 (1983), and reckless conduct (Class C), 17–A M.R.S.A. § 211 (1983). Flewelling contends, *inter alia,* that (1) the State improperly used an involuntary statement, and (2) the court erred in instructing the jury as to the applicability of the defense of self-induced intoxication. Because we agree that the State improperly used an involuntary statement, we vacate the judgment.

I.

This case arises out of the March 26, 1985 shooting by Peter Flewelling of his girlfriend, Allison Bickford, at Bickford's apartment in Fairfield. Although the shooting itself is undisputed, the events surrounding the incident are in dispute. The only eyewitnesses to the shooting were

Flewelling and Bickford, neither of whom had a clear recollection of the actual shooting. In essence, the defendant sought to explain Bickford's injuries as an accidental result of his own suicide attempt. The State characterized the shooting as an attempted murder.

Bickford recalled seeing the defendant seated on a couch in her apartment with a gun and holster lying next to him. After asking him to remove the gun from the apartment, she sat down in a chair situated next to the couch. She next recalled feeling a blow to the right side of her face, and saw the defendant pointing the gun towards his own face. The defendant, a veteran who was totally disabled from injuries sustained in an automobile-related accident, suffered chronic pain as a result of the amputation of his right leg. He testified that, on the morning of the shooting, he was in great pain and with increasing frequency considered suicide. He recalled raising the gun to his head but being unable to pull the trigger. He had no recollection, however, of shooting Bickford. Bickford's neighbor, who lived adjacent to Bickford's apartment, overheard Flewelling and Bickford arguing on the morning of the shooting. In particular, she at one point heard Bickford say that she was going to call the police, to which defendant responded "go ahead because there is going to be nothing left of either you or me."

Medical and ballistics experts testified that Bickford was shot at very close range by a bullet from the defendant's gun, a .357 Dan Wesson. Bullet fragments from the gun were found in Bickford's apartment in the living room window casing, outside on the walkway leading to the next apartment building, and in Bickford's wound. Although recovered from the shooting at the time of trial, Bickford had a scar where the bullet struck her cheek. Medical testimony revealed that the gunshot wound could have been fatal or caused serious brain damage had the bullet entered Bickford's skull a few millimeters from the actual bullet entrance.

The defendant was indicted on two counts of aggravated assault and one count each of attempted murder, reckless conduct and criminal threatening with the use of a dangerous weapon. He entered pleas of not guilty and not guilty by reason of insanity. The State later dismissed one of the counts of aggravated assault. A jury trial commenced on May 21, 1986. On May 28th, the jury found the defendant guilty of aggravated assault and reckless conduct and not guilty on the other two counts.

## II.

The defendant first challenges the State's use of an involuntary statement. The statement was transcribed on an inmate health history form he was asked to complete upon his initial arrival at the Somerset County Jail. A correctional officer at the jail asked the defendant questions from the form, and completed the form based on the defendant's responses.

Without informing either the defendant or the court, the State obtained a copy of the defendant's statement and attempted to use it on two occasions, once on its cross-examination of the defendant to impeach his testimony, and a second time as substantive evidence. At the time of its first attempted use, the court, over defense counsel's objection, permitted the State to show the statement to the defendant in order to refresh his recollection. The defendant, however, testified that he had no recollection of any of the questions asked on the form. The State then asked the defendant the following:

Q. Were you ever asked this specific question: "Have you ever attempted suicide?"

A. I don't remember the questions specifically ...

Q. Is it possible sir, that in response to that question, the question being: "Have you ever attempted suicide?" that you responded no?

A. I would say it is very possible. It's not a subject one is proud of.

Q. That was your statement on the very day that this took place?

A. No—

MR. SANDY [Defense Counsel]: Objection, Your Honor....

THE COURT: ... Sustained.

At a conference in chambers, the defendant moved for a mistrial. He objected to the use of the form on the grounds that it had not been provided to him in discovery and that he had not been given an opportunity to move to suppress the form. The State argued that it did not intend to introduce the form as evidence in its direct case, and had only recently obtained the form over the noon recess. The court stated that the form should have been made available to the defendant before it was used at trial:

> ... [T]he day of springing these surprise documents has long since gone by. If this was not given to the Defendant by discovery and you are going to use it, the appropriate way to handle that would have been to give a copy to [the defense counsel] and see if he believes it should be brought to the attention of the Court.

Despite its concerns regarding the improper use of the statement by the State, however, the court nevertheless concluded that the defendant failed to make a timely objection to the State's use of the statement for impeachment purposes. The court therefore denied the motion for a mistrial, but provided the defendant an opportunity to call the officer who handled the health history form and to offer any additional related evidence.

Upon the State's later attempt to introduce the statement into evidence, the court found that the defendant's responses to the questions asked of him were made under circumstances demonstrating that they were not the product of his free will. The court therefore excluded the statement as one made involuntarily.

█ Because the defendant failed to make a timely objection to the use of the statement, we review under the obvious error standard. M.R.Evid. 103(d); M.R. Crim.P. 52(b). That standard

> calls for the reviewing court to apply its best judgment to all the circumstances of the case at hand to determine whether inadmissible evidence received at trial without objection was in its probable effect upon the jury 'a seriously prejudicial error tending to produce manifest injustice.'

*State v. True*, 438 A.2d 460, 467 (Me.1981), quoting *State v. Baker*, 409 A.2d 216, 219 (Me.1979). We find that the State's use of the statement constituted obvious error for the following reasons.

First, the State's use of the defendant's statement violated Rule 16(a) of the Maine Rules of Criminal Procedure, under which the State has an ongoing obligation to provide the defendant with statements made by him "within a reasonable time." [1] The State's conduct in using the statement absent any notice to the defendant and without any opportunity for discovery is a clear violation of subsection (1)(A)(ii) or (1)(B) of Rule 16(a).

More importantly, however, is the fact that the statement used by the State to impeach the credibility of the defendant was *involuntary*. We have previously noted that "due process requires that a confession shown to be involuntary may not be used for any purpose ..." *State v. Borucki*, 505 A.2d 89, 93 (Me.1986), citing *Mincey v. Arizona*, 437 U.S. 385, 396–402, 98 S.Ct. 2408, 2415–19, 57 L.Ed.2d 290 (1978) and *State v. Melvin*, 390 A.2d 1024, 1031 (Me.1978).

In *Borucki*, the motion judge suppressed a statement made to two police detectives following defendant's arrest on the ground that the statement was involuntary. Although the State did not use it in its case-in-chief, it nevertheless did make use of the

---

1. M.R.Crim.P. 16(a) (Discovery by the Defendant) provides in pertinent part:

   (a) Automatic Discovery.

   (1) *Duty of the Attorney for the State.* The attorney for the State shall furnish to the defendant within a reasonable time:

   (A) A statement describing any testimony or other evidence intended to be used against the defendant which: ...

   (ii) Resulted from any confession, admission, or statement made by the defendant; ...

   (B) Any written or recorded statements and the substance of any oral statements made by the defendant....

   (2) *Continuing Duty to Disclose.* The attorney for the State shall have a continuing duty to disclose the matters specified in this subdivision.

suppressed statement in cross-examination of the defendant in an attempt to undermine his credibility. Because the defendant failed to object, however, we applied the obvious error standard to determine whether the State's use of the involuntary statement was so prejudicial as to affect the defendant's substantial rights. We found the use of that statement at trial to be highly prejudicial in subverting the defendant's credibility: "[T]he State's extensive improper questioning served to undermine sharply the defendant's credibility at a trial in which credibility was the decisive issue." *Id.*, 505 A.2d at 94. Because we found that a reasonable possibility existed that a different verdict would have resulted if the involuntary statement had not been used, we vacated the judgment. *Id.*

We similarly find the State's use of the involuntary statement to impeach the defendant's credibility in the case before us to be highly prejudicial. As in *Borucki*, the defendant's credibility in this case was also a decisive issue. The State's use of the involuntary statement was particularly damaging, both in view of his testimony that he was attempting suicide at the time of the shooting and because he and the victim were the only eye witnesses to the incident, neither of whom had a clear recollection of the events surrounding the shooting itself.

The State contends, however, that a defense psychologist responded to a hypothetical question on cross-examination that he did not find significant the assumption that several hours after the shooting the defendant had made a statement that he was not attempting suicide. The State further contends that the defendant had no recollection of any of the questions on the inmate health history form, so that the questions asked the defendant on cross-examination were "never really answered." Finally, the State contends that this case is distinguishable from *Borucki*, because in that case, the State had constructive knowledge that the defendant's statements were involuntary because of a pretrial suppression hearing. The State contends that in this case it had no means of ascertaining

whether the statement was voluntary until it was later ruled involuntary by the court.

We find, first, that the defense psychologist's response to the State's hypothetical question did little, if anything, to rehabilitate the defendant's credibility. The initial damage was done when the State used the statement in cross-examination of the defendant. Second, assuming that the defendant had no recollection of the questions on the inmate health history form, the defendant's response to the State's question cannot be said to be so innocuous as to constitute only harmless error. Rather, the defendant's answer that it was "very possible" that he had responded "no" to the question on the health history form whether he had ever attempted suicide must be viewed as highly prejudicial.

Finally, the State's argument that it had no notice of whether or not the defendant's statement was involuntary, therefore distinguishing this case from *Borucki*, is similarly without merit in view of the State's own conduct. Had the State given the defendant advance notice of its intention to use the statement at trial, as it was obligated to do under Rule 16(a), it would have had the opportunity to assert the voluntariness of the statement at a suppression hearing that unquestionably would have been initiated by defense counsel. For this reason, the State cannot now be heard to argue that the statement was made voluntarily. As we stated in *Borucki*, "[i]n light of the decisive significance here of credibility we cannot say on these facts that the jury would have found the defendant guilty in the absence of the State's use of the involuntary statement." *Id.* 505 A.2d at 94.

### III.

The defendant also contends that the court erred in instructing the jury on the issue of self-induced intoxication. The trial justice instructed the jury that it should consider evidence of intoxication if the intoxication affected the defendant's capacity to engage in intentional or knowing conduct:

Evidence of self-induced intoxication may raise a reasonable doubt only as to intentional or knowing conduct. It may not be considered as to recklessness where ... [r]ecklessness as a culpable state of mind is an element of the crime.

The trial justice further instructed the jury that it should consider self-induced intoxication only on the charges of criminal attempt to commit murder and criminal threatening with a dangerous weapon, but should not consider the defense with respect to the aggravated assault or reckless conduct charges.

The crime of aggravated assault, 17–A M.R.S.A. § 208(1)(B) (1983), requires the culpable mental state of either "intentionally, knowingly, or recklessly."[2] Under 17–A M.R.S.A. § 37(1) (1983), evidence of intoxication may raise a reasonable doubt as to the existence of a required culpable mental state. This provision is limited by section 2, however, which provides that

[w]hen recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he not been intoxicated, such unawareness is immaterial.

17–A M.R.S.A. § 37(2) (1983). "Recklessly" as a culpable mental state is defined in 17–A M.R.S.A. § 35(3) (1983).[3]

As applied to these facts, it is clear that evidence of self-induced intoxication may raise a reasonable doubt as to whether the defendant acted intentionally or knowingly with respect to the charge of aggravated assault. However, the presiding justice instructed the jurors that they were not permitted to consider intoxication as to the entire offense. The court should have instructed the jury to consider self-in-

duced intoxication on the question whether the defendant committed an intentional or knowing aggravated assault. Should the jurors find an absence of these culpable states of mind, they are then to consider whether the defendant acted "recklessly" in the commission of aggravated assault and in doing so they may not consider the intoxication defense. *Cf. State v. Snow*, 513 A.2d 274, 278 (Me.1986) (In prosecution for aggravated assault, jury was properly instructed that evidence of self-induced intoxication may raise a reasonable doubt as to intentional or knowing conduct, but not as to reckless conduct).

The defendant's second contention in essence is that the court should not have instructed the jury that self-induced intoxication may not be considered as a defense where the crime involves the culpable mental state of recklessness. He argues that the legislature did not intend to exclude *all* consideration of the defense with respect to a culpable state of mind of recklessness, but only with respect to the issue of the actor's awareness of the risk. He asserts that the defense is not precluded from consideration with respect to the other element of recklessness, i.e., the conscious disregard of a (known) risk, defined in terms of a gross deviation from the reasonable person standard.

However, as we noted in *State v. Snow*, the conscious disregard of a risk presupposes the awareness of that risk; the act of removing one's awareness of a risk by means of self-induced intoxication is therefore treated as synonymous with the conscious disregard of that risk:

The culpable state of mind of recklessness is defined in terms of consciously disregarding a risk. § 35(3)(A), (B). The

2. Section 208(1)(A) provides:
   1. A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes:
   A. Serious bodily injury to another ...

3. Section 35(3) provides:
   3. "Recklessly."
   A. A person acts recklessly with respect to a result of his conduct when he consciously disregards a risk that his conduct will cause such a result.

B. A person acts recklessly with respect to attendant circumstances when he consciously disregards a risk that such circumstances exist.
C. For purposes of this subsection, the disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

conscious disregard of a risk under section 35(3) presupposes that the person is aware of the risk. When a person would have been aware of the risk but for self-induced intoxication, his "unawareness is immaterial," § 37(2), and his conduct is treated as the equivalent of consciously disregarding a risk.

*Id.,* 513 A.2d at 278–279. Furthermore, in construing the predecessor provision to the present section 37, we noted in *State v. Barrett,* 408 A.2d 1273 (Me.1979) that "[s]elf-induced intoxication is explicitly unavailable as a defense to a crime where the culpable mental state is recklessness." *Id.* at 1276; *see also State v. Snow,* 513 A.2d at 279; *State v. Morelli,* 493 A.2d 336, 340 (Me.1985).

The entry is:

Judgment of conviction vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.