**STATE of Maine**

v.

**Kenneth COTE.**

Supreme Judicial Court of Maine.

Argued March 10, 1989.

Decided June 14, 1989.

R. Christopher Almy, Dist. Atty., Philip C. Worden (orally), Asst. Dist. Atty., Bangor, for the State.

Richard D. Violette, Jr. (orally), Ferris, Dearborn & Willey, Brewer, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

WATHEN, Justice.

Following a jury trial in Superior Court (Penobscot County, *Pierson, J.*), defendant appeals from his convictions for manslaughter, aggravated assault, operating a motor vehicle while under the influence, and operating a motor vehicle after suspension of his license. Defendant argues on appeal that the trial justice erred in refusing to give defendant's requested instructions regarding the insanity defense, the defense of self-induced intoxication, the defense of involuntary intoxication, and the requirement of voluntariness. Defendant also argues that the evidence was insufficient to sustain the jury's verdict. We find no error in the trial justice's instructions and hold that the evidence was sufficient. We affirm the judgments.

## I.

Defendant was indicted on one count of manslaughter (17–A M.R.S.A. § 203 (1983)), one count of operating under the influence (29 M.R.S.A. § 1312 (1978)), two counts of aggravated assault (17–A M.R.S.A. § 208 (1983)), and one count of operating after suspension (29 M.R.S.A. § 2184 (1978)). Defendant entered a plea of not guilty as to each count and a plea of not guilty by reason of insanity to the charges of manslaughter and aggravated assault. After trial, the jury found defendant guilty on all counts and defendant appeals from the judgments entered on the verdict.

The evidence presented at trial may be summarized as follows: While driving his pickup truck along Route 15 in Kenduskeag at approximately 6:00 p.m. on April 16, 1987, defendant collided with a vehicle driven by Daniel Martin. Immediately before the accident defendant slowed down and turned on his left turn signal. The collision apparently occurred when defendant attempted to make a left turn in the path of the Martin vehicle. An eyewitness to the accident testified that neither vehicle appeared to be travelling at an excessive speed. Daniel Martin died at the scene of the accident and his wife and daughter received serious injuries. A state trooper arrived at the scene of the accident and detected a strong odor of alcohol on defendant's breath. The trooper also noticed that defendant's speech was slurred and that his eyes were bloodshot. Based on these facts as well as defendant's seemingly disoriented behavior while he rummaged for his driver's license, the trooper formed the opinion that defendant was operating under the influence. Shortly after 8:00 p.m., a blood alcohol test performed on defendant revealed a blood alcohol level of 0.25 percent.

Dr. Kamm, a psychiatrist who ran an alcohol and drug treatment program for the military, and Dr. Evans, a physician who serves as medical director for an alcohol dependency program, testified as defense witnesses. Dr. Kamm diagnosed defendant as a severe alcoholic and as an abuser of Xanax, an anti-anxiety drug that had been prescribed for defendant by a physician. He explained that a severe alcoholic suffers from significantly impaired judgment. Dr. Evans testified that defendant had a "chemical dependency of the polydrug type." On a scale of one to ten, he rated defendant's chemical dependency as an eight. Both doctors testified that Xanax would have an adverse effect on an alcoholic and that an alcoholic would tend to become more heavily addicted to Xanax than would a non-alcoholic. Dr. Evans explained that when Xanax is taken in conjunction with alcohol "the presence of each one of those drugs enhances the power of the respective drugs."

Both physicians testified that alcoholism is recognized as a disease by the American Medical Association, the psychiatric branch of the medical community, and support groups such as Medicare and Medicaid. Dr. Evans explained that alcoholism is "described as a disease that affects people physically, mentally, spiritually, and emotionally. ... So I think it's been described and accepted, I think universally, as a—as a mental disorder which has manifestations in many spheres in an individual's life ...." They testified that alcoholism stems from "a genetically determined defect" and Dr. Evans added that environmental factors may also cause the disease. Both testified

that alcoholism entails personality changes and unpredictability and manifests itself through a variety of symptoms only two of which are intoxication and heavy drinking. In addition, alcoholics generally deny that they have a drinking problem, a fact which makes it very difficult for them to seek treatment.

Dr. Kamm testified that alcoholism, particularly as it becomes more severe, can affect an individual's ability to recognize his limits such as his inability to operate a motor vehicle safely. He also testified on cross-examination that when defendant is sober, he has the ability to distinguish between right and wrong but that the disease of alcoholism prevents him from understanding the consequences of his drinking and from controlling it.

Dr. Evans similarly testified that an alcoholic may have periods when he understands that he should not drink and drive but that his ability to make such a decision is severely impaired as soon as he takes one drink. Furthermore, according to Dr. Evans, an alcoholic who is very dysfunctional or who, like defendant, is in a stage of denial does not understand the consequences of his drinking or recognize the dangers and risks inherent in it.

## II.

Defendant first contends that the trial justice erred in refusing to instruct the jury on the insanity defense as set forth in 17–A M.R.S.A. § 39 (1983 & Supp. 1988–1989) as follows:

1. A defendant is not criminally responsible if, at the time of the criminal conduct, as a result of mental disease or defect, he lacked substantial capacity to appreciate the wrongfulness of his conduct. The defendant shall have the burden of proving, by a preponderance of the evidence, that he lacks criminal responsibility as described in this subsection.

2. As used in this section, "mental disease or defect" means only those severe-ly abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality. An abnormality manifested only by repeated criminal conduct or excessive use of alcohol, drugs or similar substances, in and of itself, does not constitute a mental disease or defect.

Specifically, defendant argues that alcoholism is a "mental disease or defect" within the meaning of the statute and that the jury should therefore have been permitted to consider, first, whether defendant suffered from that mental disease or defect and, second, whether that mental disease or defect prevented him from being able to appreciate the wrongfulness of his conduct.

In construing a predecessor of the present insanity statute in *State v. Mishne*, 427 A.2d 450 (Me.1981), we reserved the question of whether drug addiction might provide the basis for an insanity defense. We recognized, however, that a drug induced psychosis was not necessarily excluded from the definition of a mental disease or defect by the following language contained in subsection 2 of both the current and predecessor statutes: "An abnormality manifested only by ... excessive use of alcohol, drugs or similar substances, does not constitute a 'mental disease or defect.'" 17–A M.R.S.A. § 39(2). Defendant differentiates between excessive use of alcohol and alcoholism and argues that only the former is excluded from the definition of a mental disease or defect. Defendant bases his argument on the fact that the disease of alcoholism manifests itself through a number of symptoms, only one of which is the excessive use of alcohol. We conclude that section 39(2) excludes alcoholism from the "severely abnormal mental conditions" covered by the statute. The use of the term "only" reflects legislative intention to preserve the possibility that "severe" secondary diseases resulting from the use of drugs or alcohol, such as alcoholic psychosis and delirium tremens, may constitute mental diseases or defects within the meaning of the statute.[1]

1. We also acknowledge the possibility of the reverse situation in which the psychosis caused the intoxication. It is conceivable that an accused could suffer from a mental disease or

Our construction of section 39 is reinforced by an examination of the interrelationship between that section and companion provisions under the Code dealing with intoxication and defenses negating *mens rea*. Section 39 applies only if defendant demonstrates that "he lacked substantial capacity to appreciate the wrongfulness of his conduct" due to mental disease or defect. The evidence would not support a finding that defendant did not know that it was wrongful to drive while intoxicated and to make a reckless left hand turn causing death and serious injury. At best, the factfinder could have found that defendant's alcoholism caused him to drink and that his drinking prevented him from appreciating the risks involved in driving, including the risks in making the fatal turn. In theory, such evidence could provide the basis for a defense of abnormal condition of the mind. The Code provides that "[e]vidence of an abnormal condition of the mind may raise a reasonable doubt as to the existence of a required culpable state of mind." 17–A M.R.S.A. § 38. Factually, defendant's lack of awareness of the risks could raise a reasonable doubt as to whether he subjectively possessed the mental state of recklessness. The Code, however, prohibits a defendant from using evidence of self-induced intoxication to raise a reasonable doubt as to the existence of a culpable mental state where the mental state is recklessness. 17–A M.R.S.A. § 37(2) (1983). Because the charges against defendant alleged no subjective culpable mental state other than recklessness, the Legislature has precluded the assertion of any defense based on alcoholism.

### III.

Defendant next raises two arguments regarding the trial justice's refusal to give requested instructions on the defense of intoxication. The first concerns the interrelationship between the defense of self-induced intoxication and the mental state of recklessness. The second regards the defense of involuntary intoxication.

17–A M.R.S.A. § 37 (1983) defines the scope of the defense of intoxication in the Maine Criminal Code and provides as follows:

1. Except as provided in subsection 2, evidence of intoxication may raise a reasonable doubt as to the existence of a required culpable state of mind.

2. When recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he not been intoxicated, such unawareness is immaterial.

3. As used in this section:

A. "Intoxication" means a disturbance of mental capacities resulting from the introduction of alcohol, drugs or similar substances into the body; and

B. "Self-induced intoxication" means intoxication caused when the actor intentionally or knowingly introduces into his body substances which the actor knows or ought to know tend to cause intoxication, unless he introduced them pursuant to medical advice or under such duress as would afford a defense to a charge of crime.

Defendant requested that the trial court give the following instruction on intoxication:

When the requisite culpable state of mind is recklessness, if the Defendant, due to intoxication, is unaware of a risk of which he would have been aware had he not been intoxicated, such awareness is immaterial and intoxication is no defense. However, if Mr. Cote would not have been aware of the risks he created even if he had not been intoxicated, then intoxication may even establish a reasonable doubt as to recklessness.

If Defendant's intoxication was involuntary, then he must be found not guilty as to all crimes charged. The rationale is to exclude from criminal responsibility an individual, previously criminally re-

---

defect that produces an uncontrollable urge to drink. In the present case we have no occasion to express an opinion whether section 39 would

apply if the resultant drinking deprived the accused of substantial capacity to appreciate the wrongfulness of his conduct.

sponsible, for reasons beyond his control. An individual cannot be punished for actions which are not the product of his conscious will.

The trial court declined and instead instructed the jury in the terms of the statute.

■ Defendant argues on appeal that the court erred in failing to instruct that if because of the underlying disease of alcoholism, "Mr. Cote would not have been aware of the risks he created even if he had not been intoxicated, then intoxication may even establish a reasonable doubt as to recklessness." Because the requested instruction is inartfully stated, we need only refer to our prior holding that "[s]elf-induced intoxication is explicitly unavailable as a defense to a crime where the culpable mental state is recklessness." *State v. Barrett*, 408 A.2d 1273, 1276 (Me. 1979) *quoted with approval in State v. Flewelling*, 524 A.2d 765, 769 (Me.1987).

■ Defendant also asserts error in the trial justice's refusal to instruct on the defense of involuntary intoxication. Defendant argues that because he is an alcoholic, his intoxication was, therefore, not the product of his conscious will and that he thus was entitled to an instruction on involuntary intoxication. Defendant's argument misconstrues the defense of involuntary intoxication as it exists in Maine. The Code does not define involuntary intoxication. We have ruled, however, that the defense of involuntary intoxication is available only when the defendant's intoxicated state is not self-induced within the meaning of the statute. *See State v. West*, 416 A.2d 5, 9 (Me.1980); *State v. Rice*, 379 A.2d 140, 144–45 (Me.1977). Defendant offered no evidence to demonstrate that his consumption of alcohol was not knowing or intentional or that he did not know that the consumption of alcohol tends to cause intoxication.

## IV.

Finally, we find that the presiding justice adequately instructed the jury with regard to the requirement of voluntariness and we find that the evidence is sufficient to support the convictions.

The entry is:

Judgments affirmed.

McKUSICK, C.J., and CLIFFORD, J., concur.

HORNBY, Justice, with whom GLASSMAN, Justice, joins, concurring.

I agree that on this record the defendant did not establish that alcoholism entitled him to an insanity defense instruction. The evidence presented to the trial justice was that alcoholism "may be considered as a mental disease." But the statute requires more. The term " 'mental disease or defect' means only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality." 17–A M.R.S.A. § 39(2) (Supp.1988). The record supports the trial justice's conclusion that the evidence would not justify a finding that this defendant's alcoholism grossly and demonstrably impaired his perception or understanding of reality.

If the Court means to say that alcoholism per se could never qualify, however, I do not agree. The statute says: "An abnormality manifested only by ... excessive use of alcohol ..., in and of itself, does not constitute a mental disease or defect." *Id.* By ordinary usage, excessive use of alcohol and alcoholism are not the same thing. If the medical science presented at trial shows that a defendant's alcoholism is manifested by characteristics in addition to excessive use of alcohol *and* that it is a "severely abnormal" mental condition that "grossly and demonstrably impair[s]" his "perception or understanding of reality"[1] *and* that, as a result, "he lacked substantial capacity to appreciate the wrongfulness of his conduct," then such a defendant is entitled to an insanity defense instruction under the statutory language the Leg-

---

1. The trial justice concluded that any gross abnormal perceptions of reality in this case resulted from intoxication, not alcoholism.

islature has provided us.[2]  17–A M.R.S.A.
§ 39(1) & (2) (Supp.1988).

In all other respects I join the Court's opinion.

**2.** There is no direct legislative history on Maine's language.  Maine's insanity defense generally was based on the opinion in *United States v. Brawner*, 471 F.2d 969 (D.C.Cir.1972); *see* L.D. 314 § 58 comment (107th Legis.1975), and *Brawner* had adopted the Model Penal Code formulation.  471 F.2d at 990–92.  Maine's exclusion of excessive use of alcohol seems to draw upon two provisions of the Model Penal Code: "[i]ntoxication does not, in itself, constitute mental disease within the meaning of Section 4.01" and "the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."  Model Penal Code §§ 2.08(3) and 4.01(2) (Proposed Official Draft 1962).  The Model Penal Code formulation contemplated adaptation to changing medical knowledge.  According to the commentary as it was drafted in 1959:

There seems to be, at present, no clearly accepted concept of a psychosis giving rise to an uncontrollable urge to drink.  On principle, if overindulgence in drink results from mental disease the actor would not be responsible if such drinking led to a lack of the capacities intrinsic to responsibility.  In view of the divergence of medical opinion, however, the draft leaves the issue open for determination on the evidence that is adduced in a case where the point is raised under Section 4.01.  The formulation does not preclude the defendant's reliance on impairment of capacity due to intoxication which is in turn attributable to mental disease within the intendment of Section 4.01.

Model Penal Code § 2.08 (Tent. Draft No. 9 comment 5 May 8, 1959).